IRVING D. FISHER AND SYLVIA FISHER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5481-67.    Filed April 29, 1970.

*Maurice Weinstein*, for the petitioners.
*Denis J. Conlon*, for the respondent.

## OPINION

The issue presented is whether amounts totaling $18,413.97 withdrawn by petitioner from the corporation in excess of his stated compensation in 1963, 1964, and 1965 constituted amounts borrowed from the corporation as contended by petitioner or whether they constituted additional compensation to petitioner as determined by the respondent. On brief the respondent contends that there was no bona fide debtor-creditor relationship between petitioner and the corporation and that these withdrawals, irrespective of any formal obligation to repay, are income to the petitioner within the meaning of section 61(a) of the Internal Revenue Code of 1954.[1]

Whether a bona fide debtor-creditor relationship exists is a question of fact to be determined upon a consideration of all the pertinent facts in the case. See *Jack Haber*, 52 T.C. 255, affd. (C.A. 5) 422 F. 2d 198 (1970). An essential element is whether there exists a good-faith

---

[1] Sec. 61(a) of the Internal Revenue Code of 1954 states:

SEC. 61. GROSS INCOME DEFINED.

(a) GENERAL DEFINITION.—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

(1) Compensation for services, including fees, commissions, and similar items; * * *

intent on the part of the recipient of the funds to make repayment and a good-faith intent on the part of the person advancing the funds to enforce repayment. See *Chism's Estate* v. *Commissioner*, (C.A. 9) 322 F. 2d. 956, affirming a Memorandum Opinion of this Court, and *C. M. Gooch Lumber Sales Co.*, 49 T.C. 649.

Here the amounts which the petitioner withdrew from the corporation were recorded in the corporation's books as accounts receivable and thereafter $13,500 of the withdrawals was made the subject of two unsecured demand notes providing for interest at 4 percent. At the trial the petitioner testified that his son Michael, who owned all the stock of the corporation, knew of the withdrawals and that both he and his son expected the amounts to be repaid when he was able to make repayment. Michael testified that he knew of these withdrawals and that he expected the petitioner would repay these amounts, and that there was no understanding between them that the amounts would not have to be repaid.

The judicial ascertainment of someone's subjective intent or purpose motivating actions on his part is frequently difficult, and his true intention is to be determined not only from the direct testimony as to intent but from a consideration of all the evidence. *Army Times Sales Co.*, 35 T.C. 688, and *American Properties, Inc.*, 28 T.C. 1100, affd. (C.A. 9) 262 F. 2d 150. In determining such question an essential consideration is whether under all the particular facts and circumstances there was a reasonable expectation of repayment in light of the economic realities of the situation. *C. M. Gooch Lumber Sales Co.*, *supra*. In *American Properties, Inc.*, *supra*, we stated:

The statement of an interested party of his intention and purpose is not necessarily conclusive. *Helvering v. National Grocery Co.*, 304 U.S. 282, affirming 35 B.T.A. 163. In *R. L. Blaffer & Co.*, 37 B.T.A. 851 affd. (C.A. 5) 103 F. 2d 487, certiorari denied 308 U.S. 576, we stated that one's categorical statement may be of less weight than the facts and circumstances which affect it and that "[t]o be skeptical of the weight to be accorded an interested witness' statement in view of other evidence is not the same as wholly to reject the statement as if it were dishonest." * * *

Upon a consideration of the whole record, it is our conclusion that the withdrawals here in question did not give rise to a bona fide debtor-creditor relationship. At the time of the withdrawals the petitioner was in fact, if not in law, insolvent. Federal tax liens totaling $76,340.19 were outstanding against him during the years 1963, 1964, and 1965. Since 1960 the petitioner had also been indebted to Fisher Iron & Steel Co. in the amount of $26,998.12. This obligation has never been discharged. Prior to the withdrawals the mortgage on petitioner's home had been foreclosed and he had been unable to redeem it. The petitioner's assets consisted of only his furniture valued

at $2,000 and an insubstantial amount of cash. His only source of income was the salary that he received from the corporation. The petitioners son Michael was aware of the petitioner's financial condition. The petitioner testified in effect that he expected to expand the corporation's operations and increase its earnings and thereby enable it to pay him a larger salary out of which he could repay his indebtedness, including the withdrawals in question. However, even if he had been able to obtain an increase in his stated salary, we fail to see how he could have expected to repay his indebtedness, including the withdrawals, from any such increase. In 1962 the petitioner had commenced negotiations with the Internal Revenue Service looking toward a compromise of his large tax liability and was aware that as a condition to a compromise it would be necessary to enter into a collateral agreement requiring that a substantial portion of his future income be applied in payment of the total tax liability over and above any amount agreed upon in compromise. As shown by the facts, the petitioner in 1965 did enter into a compromise agreement and a collateral agreement which provided for such application over a period of 10 years to the extent of 20 percent of income between $6,000 and $8,000, 30 percent of income between $8,000 and $10,000, and 50 percent of all income in excess of $10,000. We think the conclusion is inescapable that there was no reasonable expectation, at the time the amounts in question were withdrawn from the corporation, that they would be repaid. Under all the circumstances it is our conclusion that there was no bona fide intention on the part of either the petitioner or the corporation that the amounts in question should be repaid. It should be added that, insofar as the record shows, no part of the withdrawals has been repaid and that, although the demand notes called for the payment of interest, no interest has ever been paid.

We are not here presented with the question which often arises as to whether a withdrawal from a closely held corporation constitutes a dividend rather than a bona fide loan. All the stock of the corporation was owned by the petitioner's son Michael, and there could be no basis for holding that the petitioner was in receipt of a dividend. However, we have held that where no bona fide indebtedness existed withdrawals by an officer may constitute taxable compensation. See *Jack Haber, supra.* Here the respondent determined that the withdrawals constituted salary income, and on this record we cannot conclude that such determination was erroneous. On the contrary, the evidence supports that determination. Petitioner ran the corporation and he apparently was the only one who rendered services that produced any income for it. Michael apparently devoted little or no time to the corporation, having been away at school for 2 of the years in question and having been occupied in his own profession during the

remaining year. Apparently the petitioner was rendering to the corporation substantially the same services as he had rendered to the corporation by which he had been previously employed, which was a corporation owned by himself and his family. During the years 1956 and 1957 he had drawn from that corporation salaries in the respective amounts of $24,000 and $27,000. Under the circumstances, we think it reasonable to conclude that the petitioner's services were worth more than his stated salary and that the corporation permitted the petitioner to make withdrawals only in connection with the rendition of such services. There is no intimation that the amounts withdrawn constituted gifts to petitioner from the corporation or from his son Michael. We therefore hold that the withdrawals in question constituted taxable compensation to petitioner.

*Decision will be entered for the respondent.*