MICHAEL V. FRIERDICH and CONNIE J. FRIERDICH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Frierdich v. Commissioner
Docket No. 47243-86.
United States Tax Court
T.C. Memo 1989-103; 1989 Tax Ct. Memo LEXIS 103; 56 T.C.M. (CCH) 1439; T.C.M. (RIA) 89103; March 15, 1989. Michael V. Frierdich, pro se. Clinton M. Fried, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal income taxes and an addition to tax for the following taxable years: Addition to Tax
Taxable Year
Deficiency
Sec. 6653(a) [1]
1979
[2] $  1,137
$    57
1980
86,795
4,340
*104 After concessions by petitioners, the issue for our decision is whether Michael V. Frierdich's receipt of $ 100,000 from a client for whom he was obligated to render legal services in the future was a loan or an advance payment for legal services when received. FINDINGS OF FACT Some of the facts of this case have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated by this reference. Petitioners, Michael V. Frierdich (hereinafter petitioner) and Connie J. Frierdich, resided in Columbia, Illinois, at the time of the filing of the petition in this case. Petitioner has been engaged in the practice of law since 1970 and continues to practice to this day. During the taxable year in dispute, petitioner was a member of the law firm of Zimmer & Frierdich. In addition to practicing law, petitioner was involved in the development of real estate and participated in investment activities in which he became acquainted with many individuals, including George F. Reeves, Jr. Petitioner and Mr. Reeves established a close business relationship which, at times, included Mr. Reeves' wife, Ruth S. Reeves. Mr. Reeves passed away on August 1, 1979. *105 Subsequent to Mr. Reeves' death, Mrs. Reeves, as the executrix of the estate of George F. Reeves, Jr., contacted petitioner for legal representation of the estate. Petitioner and Mrs. Reeves never discussed the amount of legal fees pertaining to his representation, as it was petitioner's practice at Zimmer & Frierdich in the representation of other estates to bill the client upon the closing of those estates. Petitioner did not maintain any records regarding the amount of time spent or money expended in the administration of the estate. It was petitioner's practice at Zimmer & Frierdich, upon the closing of other estates, to bill the client based upon a percentage of the estate and not upon the amount of time or money spent in the representation of such. In 1980, during the period of time in which petitioner was representing the estate of George F. Reeves, Jr., petitioner received the sum of $ 100,000 from Mrs. Reeves in exchange for a promissory note (note) dated January 1, 1980, and signed by petitioner. There were no restrictions placed upon the use of the $ 100,000. The note carried an interest rate of 8 percent per year during 1980, 1981, 1982, 1983, 1984, and 1985, years *106 in which the prime rate of interest were 15.27, 18.87, 14.86, 10.79, 12.04, and 9.93 percent, respectively. The principal was "due and payable at the time of payment of attorney's fees due the undersigned [petitioner] subject to closing of the estate of George F. Reeves, Jr." Furthermore, "In the event of default, the undersigned [petitioner] further authorizes Ruth S. Reeves to reduce from any amounts owed Michael V. Frierdich, as attorney for the executor and estate of George F. Reeves, Jr. amounts due here entered plus accrued interest." Petitioner needed the $ 100,000 to purchase additional breeding stock for his thoroughbred horse farm. There was no security agreement executed in conjunction with the note. As of the date of this trial, petitioner had not made any payments of principal or interest with respect to the note, and Mrs. Reeves had not maintained any schedules regarding amortization of the purported loan. Petitioners reported their income on the cash basis method. On the original Federal estate tax return filed for the estate of George F. Reeves, Jr., and the first, second, and third amended Federal estate tax returns, petitioner and the law firm of Zimmer *107 & Frierdich are listed as the attorney for the executrix of the estate. On the fourth, fifth, and sixth amended Federal estate tax returns, petitioner is listed as the attorney for the executrix of the estate. The Commissioner determined that for the taxable year 1980, the $ 100,000 received by petitioner from Mrs. Reeves should be treated as estate fee income from the Estate of George F. Reeves, Jr., and taxable as gross income. The Commissioner also determined that petitioners were liable for an addition to tax pursuant to section 6653(a) as the underpayment of tax for the taxable years 1979 and 1980 was due to negligence or intentional disregard of the rules and regulations. [3]
OPINION Petitioners have the burden of proving that the $ 100,000 received by petitioner was non-taxable proceeds of a bona fide loan and not an advance payment for legal services to be rendered in the future. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). If petitioners can satisfy their burden of proof, *108 the proceeds of the loan will not constitute taxable income to them. Consolidated-Hammer Dry Plate & Film Co. v. Commissioner,317 F.2d 829 (7th Cir. 1963), affg. in part and revg. in part a Memorandum Opinion of this Court; Falkoff v. Commissioner,62 T.C. 200, 206 (1974); Arlen v. Commissioner,48 T.C. 640, 648 (1967). Whether the transaction between Mrs. Reeves and petitioner was a loan or an advance payment for legal services is a factual question to be decided based upon a consideration of all the surrounding facts and circumstances. Fisher v. Commissioner,54 T.C. 905, 909 (1970), citing Haber v. Commissioner,52 T.C. 255 (1969), affd. 422 F.2d 198 (5th Cir. 1970). Although courts have focused upon several objective factors in deciding whether an advance payment is a loan, [4] the determinative question is whether at the time the parties entered into the transaction, the recipient of such funds intended to make monetary repayment of the amount of the advance and whether the person *109 advancing the funds intended to enforce monetary payment. Haag v. Commissioner, 88 T.C. 604, 615-616 (1987); Beaver v. Commissioner,55 T.C. 85, 91 (1970); Fisher v. Commissioner, supra at 909-910; Haber v. Commissioner,52 T.C. at 266; Saigh v. Commissioner,36 T.C. 395, 419 (1961). In addition, the obligation to repay must be unconditional and not contingent upon some future event. United States v. Henderson,375 F.2d 36, 39 (5th Cir. 1967); Bouchard v. Commissioner,229 F.2d 703 (7th Cir. 1956), affg. a Memorandum Opinion of this Court. An intent to repay the purported loan by rendering services in the future does not satisfy the requirement for exclusion from income. Beaver v. Commissioner, supra.
*110 In the instant case, petitioners contend that, because petitioner used the proceeds of the advancement for a legitimate business purpose, a bona fide loan exists. Although this factor does not, by itself, establish that a bona fide loan exists, we believe that petitioner used the proceeds of the advancement for a legitimate business purpose. Petitioners further contend that the advancement was received personally by petitioner and that such funds were not paid through, or involved with, the law firm of Zimmer & Frierdich, which represented the Estate of George F. Reeves, Jr. Upon review of the record, however, we are faced with inconsistencies in the testimonial and documentary evidence submitted with respect to petitioners' contention. The original Federal estate tax return and the first, second, and third amended returns for the estate lists the law firm of Zimmer & Frierdich as the attorney for the executrix of the estate. The fourth, fifth, and sixth amended returns list petitioner as the attorney for the executrix of the estate. Petitioner testified that it was he who was asked by Mrs. Reeves to represent the estate. He subsequently testified that the law firm of Zimmer *111 & Frierdich represented the estate. Finally, by the terms of the note, in the event of default by petitioner, Mrs. Reeves was given the right to offset against the amount due on the note, any legal fees owed to petitioner in the representation of the estate. In their attempt to assign the legal representation of the estate to the law firm and thereby isolate the receipt of any legal fees in another entity, petitioners have failed to clarify these inconsistencies. The transaction herein was not made at arm's length. Petitioner testified that in addition to transacting business with Mr. Reeves, Mrs. Reeves became involved in the business relationship between the two men. In addition, the note signed by petitioner carried an interest rate of 8 percent per year when the prime rate of interest was 15.27, 18.87, 14.86, 10.79, 12.04, and 9.93 percent during the first 5 years that the advancement was outstanding; petitioner provided no security to Mrs. Reeves; and no payments of principal or interest were ever made. The transaction between petitioner and Mrs. Reeves was not made at arm's length. Petitioner testified that he had previously conducted transactions such as the one *112 in the instant case with Mr. Reeves and that Mrs. Reeves was in fact knowledgable and closely involved in many of these business relationships. Petitioners have not brought forth any evidence whatsoever documenting these alleged loans. More importantly, however, is the fact that, even though Mrs. Reeves was present at trial, petitioners failed to call her as a witness. It is a well established principle that the failure of a party to introduce evidence within his possession which would be favorable to him, gives rise to the presumption that if introduced, that evidence would be unfavorable. Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Petitioners presented at trial a copy of the promissory note. The note, dated January 1, 1980, provides interest at 8 percent per year and ties repayment of the $ 100,000 with the time of payment of legal fees in the representation of the estate. In the event of default on the note by petitioner, Mrs. Reeves was authorized to offset the principal amount of the note *113 against any legal fees she owed petitioner in the representation of the estate. As of the date of this trial, petitioner had not made any payments of principal or interest. The loan agreement and the fact that interest was being charged are factors indicative of a bona fide loan. Matter of Uneco, Inc.,532 F.2d 1204, 1208-1209 (8th Cir. 1976). However, in the instant case, there were no amortization schedules made or plans to repay the principal or interest and, in fact, payments were never made. No fixed repayment date was specified as repayment was dependent upon the closing of the estate and the payment by Mrs. Reeves of the legal fees. Petitioners contend that even though the note was unsecured, petitioner's net worth was in excess of $ 1,000,000 and Mrs. Reeves knew this, thus providing adequate security. [5] However, the failure by petitioners to bring forth any evidence corroborating their claim and the failure to elicit this information from Mrs. Reeves as a witness weighs against petitioners. Wichita Terminal Elevator Co. v. Commissioner, supra.
*114 Petitioner's obligation to repay the note was conditional upon the closing of the estate. By the terms of the note, the principal and interest were not due until payment of the legal fees for the estate. Petitioner testified that, at the time the note matured (when he billed Mrs. Reeves for representing the estate), he would have sufficient money to repay the note. Thus, based upon the terms of the note and petitioner's testimony, it appears that at the time of the advancement both parties intended that repayment would be in the form of legal services with a final accounting and set-off at the time petitioner closed the estate and billed Mrs. Reeves for the legal services rendered. The circumstances surrounding the transaction at the time the advancement was made convince us that neither party intended that the sum advanced would be repaid. The failure of petitioner to give security, the lack of any schedule for repayment and the complete failure of repayment, the contingency associated with repayment, and petitioner's rendering of legal services subsequent to the advancement, establish that the advancement received by petitioner was not a loan, but rather, an advancement for *115 legal services to be rendered in the future. Petitioners contend, however, that such a result cannot be reached because the payment of legal fees in the representation of an estate is a matter within the province of the probate court and is to be decided by that court in the exercise of its judicial discretion. The law of the State of Illinois controls the underlying question of estate and probate practice and the Federal statutes determine the Federal income tax consequences thereof. Blair v. Commissioner,300 U.S. 5, 9-10 (1937). Under Illinois law, section 27-2 of the Probate Act of 1975, Ill. Ann. Stat., ch. 110 1/2, par. 27-2 (Smith-Hurd 1978), provides that the attorney for a representative is entitled to reasonable compensation for his services. The amount to be paid an attorney for services rendered by him for an administrator is a matter peculiarly within the province of a probate court and is to be determined by that court in the exercise of its judicial discretion. Matter of Estate of Thomson,139 Ill. App.3d 930, 487 N.E.2d 1193 (1986); *116 Estate of Weber v. Hampshire,81 Ill. App.3d 257. 401 N.E.2d 245 (1980); Matter of Estate of Minsky,59 Ill. App.3d 974, 376 N.E.2d 647 (1978). However, in the instant case we do not purport to decide the amount of compensation to be paid to petitioner nor the reasonableness of such amount. The issue before us in redetermining petitioners' deficiency is whether the advancement received by petitioner was a loan or an advance payment for legal services. The legality and propriety of advancing such a fee is a matter peculiarly within the province and discretion of the probate court. As a matter of Federal tax law, if legal fees are paid without prior approval of the probate court, these fees are includable in income when received. Sec. 61(a). Petitioner, as a cash basis taxpayer, must report the entire amount of the advance fee in taxable income in the taxable year received. This remains true even though a probate court may subsequently decide that the advance fee is unreasonable compensation, thereby obligating petitioner to repay *117 a portion of the advancement, North American Oil Consolidated v. Burnet,286 U.S. 417, 424 (1932), and even though the advance fee is payment for services to be performed in future years. Schlude v. Commissioner,372 U.S. 128 (1963); American Automobile Association v. United States,367 U.S. 687 (1961); Automobile Club of Michigan v. Commissioner,353 U.S. 180 (1957). After concessions by petitioners, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section numbers refer to the Internal Revenue Code in effect for the taxable year 1980, and all rule numbers refer to the Rules of Practice and Procedure of this Court. ↩
2. The deficiency for the taxable year 1979 is not in dispute.↩
3. Petitioners have conceded the addition to tax for 1979 and 1980, insofar as we decide that the Commissioner's determination for the deficiency in 1980 is correct.↩
4. Factors which have been considered by courts as relevant in deciding whether a bona fide loan exists include: (1) the existence or non-existence of a debt instrument; (2) provisions for security, interest payments, and a fixed repayment date; (3) whether or not repayments of the loan were made; (4) the taxpayer's ability to repay the loan; (5) the borrower's receipt of compensation; and (6) the testimony of the taxpayer. See Matter of Uneco, Inc.,532 F.2d 1204, 1208 (8th Cir. 1976); In re Indian Lake Estates, Inc.,448 F.2d 574, 578-579 (5th Cir. 1971); Haber v. Commissioner,52 T.C. 255 (1969), affd. 422 F.2d 198 (5th Cir. 1970). Most of the cases that address these factors do so in a closely held corporation/shareholder context concerning whether advances made to a corporation are contributions to capital or compensation, loans or dividends. The parties in the instant case are not dealing at arm's length (p. 8, infra), and, consequently, the above factors prove instructive. See Slear v. Commissioner,T.C. Memo. 1987-395↩.
5. Petitioners contend that copies of their joint Federal income tax returns for the taxable years 1979 and 1980 corroborate petitioner's testimony regarding his net worth. We do not agree. It is incumbent upon petitioners to bring forth and establish by a preponderance of the evidence that the transaction in question was a bona fide loan. Petitioners' joint Federal income tax returns do not reflect the net worth of petitioner for the relevant taxable year.↩