BERNARD A. AND ROMANA J. FUREY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Furey v. Commissioner
Docket Nos. 3039-92, 3677-93[1]
United States Tax Court
T.C. Memo 1995-15; 1995 Tax Ct. Memo LEXIS 15; 69 T.C.M. (CCH) 1655; January 17, 1995, Filed *15 Decision will be entered under Rule 155. Bernard A. Furey, pro se. For respondent: Carol Shultze. WOLFE
WOLFE
MEMORANDUM OPINION WOLFE, Special Trial Judge: These cases were assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [2]
In statutory notices of deficiency dated November 14, 1991, and November 25, 1992, respondent determined the following deficiencies in and additions to petitioners' Federal income taxes: Additions to Tax and Penalties
Sec.
Sec.
Sec. Year
Deficiency
6653(a)(1)
6653(a)(2)
6653(a)(1)(A)
1984
$ 3,984
$ 199
[1]
--
1985
3,413
171
[1]
--
1986
4,108
--
--
$ 205
1987
3,202
--
--
160
1988
5,734
[2] 287
--
--
1989
3,798
--
--
--
1990
2,528
--
--
--
1991
2,635
--
--
--
Additions to Tax and Penalties
Sec. Sec. Sec. Year
6653(a)(1)(B)
6661 6662 1984
--
--
--
1985
--
--
--
1986
[1]
--
--
1987
[1]
--
--
1988
--
$ 1,434
--
1989
--
00
$ 760
1990
--
--
506
1991
--
--
527
*16 The issues for decision with respect to petitioners' Federal income taxes are: (1) Whether petitioners are entitled to Schedule C losses for all of the years in issue; (2) whether petitioners sustained a nonbusiness bad debt in the amount of $ 13,500 during 1988 and whether they are entitled to capital losses claimed on their 1988, 1989, 1990, and 1991 returns with respect to the reported nonbusiness bad debt; (3) whether petitioner Bernard A. Furey is liable for self-employment tax for 1989; (4) whether petitioners are entitled to claimed employee business expense adjustments to income in the amounts of $ 3,444 and $ 3,032 for 1988 and 1989, respectively; (5) whether petitioners are liable for additions to tax for negligence for 1984 through 1988 and the accuracy-related penalty for negligence for 1989, 1990, and 1991; and (6) whether petitioners had a substantial underpayment within the meaning of section 6661 for 1988. Some of the facts have been stipulated and are so found. Petitioners resided in McLean, Virginia, when their petition was filed. Petitioners filed joint Federal income tax returns for the years in issue. For convenience and clarity, the findings of fact and *17 applicable law are discussed together with respect to each issue. 1. Schedule C Losses
Petitioners contend that during the years in issue, Bernard A. Furey (petitioner) sought to acquire and develop various hotel and resort properties around the world, particularly in Hawaii and the Pacific Rim. He visited potential development or investment sites, corresponded with attorneys, architects, and developers concerning particular ventures, and corresponded with commercial and investment bankers in an effort to establish financing for the ventures. Petitioner claims that he has strong professional ties with architects, design groups, contractors, and developers. Petitioner's efforts have never resulted in any hotel developments or investments. Petitioner characterizes his activities as a "hotel and tourism development" business. In this opinion, we refer to petitioner's activities during the years in issue as the hotel activity or hotel activities. Such designation is made solely for identification purposes. Prior to the years in issue, petitioner owned and operated several corporate entities, the Sunland corporations. Petitioner testified that in the early 1970's, as president *18 of Sunland Holidays, Inc., he coordinated ground tours of Hawaii, booked blocks of hotel rooms for Hawaiian tour groups, and made many business contacts in Hawaii. In 1980, petitioner established Sunland Investment Corp. to act as the master franchiser for Howard Johnson Co. in Hawaii. Petitioner testified that under the terms of a master franchise agreement, he held the exclusive right for a period of 20 years to operate hotels, restaurants, and ice cream shops under the Howard Johnson name within the State of Hawaii. [3] Petitioner never developed a Howard Johnson hotel, restaurant, or ice cream shop. By the end of 1984, all of the Sunland companies had ceased to be viable corporate entities. Petitioner never filed any corporate income tax returns for any of the Sunland corporations because the entities never had any net income. After the years in issue, petitioner continued his activities concerning ventures *19 in the hotel industry. Petitioner testified that recently, he has devoted time to development of a floating hotel (flotel) in China and in regions of Southeast Asia. Petitioner claims that the flotel endeavor will be profitable and that his potential success with the flotel is due, in large part, to his continued presence in the hotel and tourism industry. In each of the years in issue, petitioners claimed losses in connection with the hotel activity on Schedules C, Profit or (Loss) from Business or Profession (Sole Proprietorship). The following chart reflects the gross receipts, expenses, and losses declared by petitioners on Schedule C for the years 1984 through 1991. [4]
Year
Gross Receipts
Deductions
Net Loss
1984
$     0
$  31,936
$  31,936
1985
0
26,834
26,834
1986
0
27,470
27,470
1987
0
21,335
21,335
1988
0
14,054
[1] 14,054
1989
2,500
16,574
[2] 16,574
1990
0
13,881
13,881
1991
0
14,466
14,466
Total
$ 2,500
$ 166,550
$ 166,550
*20 Throughout the period in question, petitioner Romana J. Furey was employed as a flight attendant, and petitioners' tax returns reflect her wages and some unearned income as gross income. Respondent determined that petitioner's hotel activity was an activity not engaged in for profit during the years at issue. An "activity not engaged in for profit" is defined in section 183(c) as an activity other than one with respect to which deductions are allowable under section 162 or paragraphs (1) or (2) of section 212. If an activity is not engaged in for profit, section 183(b)(1) allows only those deductions which are not dependent on a profit motive. Section 183(b)(2) allows all other deductions which would be allowable if the activity were engaged in for profit, but only to the extent that gross income from the activity exceeds the deductions allowable under section 183(b) (1). Deductions are allowable under section 162 for expenses of carrying on an activity that constitutes the taxpayer's trade or business if those expenses are ordinary and necessary to the conduct of the trade or business. Section 212 allows the taxpayer to deduct expenses incurred in connection with an activity *21 engaged in for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. A taxpayer must show that he engaged in an activity with an actual and honest objective of making a profit in order to deduct expenses of the activity under either section 162 or 212. Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs. Although a reasonable expectation of profit is not required, the taxpayer's profit objective must be bona fide. Keanini v. Commissioner, supra at 46; Hulter v. Commissioner, 91 T.C. 371, 393 (1988). Whether a taxpayer had an actual and honest profit objective is a question of fact to be resolved from all relevant facts and circumstances. Keanini v. Commissioner, supra; Hulter v. Commissioner, supra; Golanty v. Commissioner, 72 T.C. 411, 426 (1979), *22 affd. without published opinion 647 F.2d 170 (9th Cir. 1981). Greater weight is given to objective facts than to a taxpayer's statement of intent. Beck v. Commissioner, 85 T.C. 557, 570 (1985); Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); sec. 1.183-2(a), Income Tax Regs.
Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of factors, which is in large part a synthesis of prior case law, to be considered in determining whether an activity is engaged in for profit. Keanini v. Commissioner, supra at 47. These factors include: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional *23 profit, if any, which is earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. No single factor is controlling. Rather the facts and circumstances of these cases taken as whole are determinative. After reviewing the entire record before us, we conclude that petitioners have failed to carry their burden of proving that profit was the objective of the hotel activity. In determining whether petitioner had an actual and honest objective of making a profit, we first consider whether he conducted his hotel activity in a businesslike manner as set forth in section 1.183-2(b)(1), Income Tax Regs. Petitioners contend that petitioner Bernard A. Furey conducted his hotel activity on a full-time basis in a businesslike manner. However, they failed to introduce any credible evidence of the amount of time petitioner devoted to the activity. In addition, petitioners failed to show that petitioner conducted his hotel activity in a businesslike manner. Petitioner did not maintain a separate bank account or a separate set of accounting records for his hotel activity. Although petitioners introduced a plethora of correspondence *24 between petitioner and various potential investors and financiers, they failed to introduce any financial records related to the hotel activity. From the record as a whole, we find that petitioner did not conduct his hotel activity in a businesslike manner. Another indication that petitioner did not have an actual and honest profit objective is the fact that petitioner never developed or invested in any hotels or resorts nor did he report any net income from the hotel activity during the years in issue. A record of substantial losses over many years and the unlikelihood of achieving a profitable operation are important factors bearing on a taxpayer's actual intention. Golanty v. Commissioner, supra at 426-427; sec. 1.183-2(b)(6) and (7), Income Tax. Regs.
During the 8 years in issue, petitioner reported aggregate losses in the amount of $ 166,550 and gross receipts in the amount of $ 2,500 with respect to his hotel activity. In addition, the record indicates that petitioner sustained further losses from his activity in the years subsequent to the years in issue. Petitioner contends that the losses sustained by his hotel activity were attributable *25 to unforeseen circumstances, including depressed market conditions, especially in Hawaii. Petitioner testified that the hotel industry was on the decline as early as 1980. We acknowledge that a series of losses during the initial stages of an activity and losses sustained because of unforeseen or fortuitous circumstances beyond the control of the taxpayer do not necessarily indicate that the activity was not engaged in for profit. See Engdahl v. Commissioner, 72 T.C. 659, 669 (1979); sec. 1.183-2(b)(6), Income Tax Regs. However, on this record, we are not convinced that an economic recession caused petitioner's losses. As we noted in Thomas v. Commissioner, 84 T.C. at 1278: One cannot simply shut one's eyes to the circumstances that may impact upon the viability of a transaction and then be heard to complain that unforeseen circumstances caused the economic downfall of that same transaction. * * *
We find that petitioner's continued losses indicate that he did not engage in his hotel activity with an actual and honest profit objective. The fact that a taxpayer has engaged in similar activities in the past *26 and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity for profit, even though the activity is presently unprofitable. Sec. 1.183-2(b)(5), Income Tax Regs. Petitioner presented no evidence showing that he had prior success or experience in the hotel development field or in any similar field. Petitioner contends that he has been successful with other hotel projects in Hawaii, but he has failed to present any evidence to support his contention. Although petitioner indicated that he was very successful in the early 1970's in the Hawaiian tourist market, petitioner's claimed experience did not involve the purchase, finance, or management of hotels. Petitioner never successfully developed a hotel, purchased a hotel, or formed a syndicate of investors to purchase a hotel. Petitioner contends that although he did not earn a profit in any of the years in which he attempted to promote investment in hotels or acquire hotels, he had the opportunity to earn a substantial profit. Although an opportunity to earn a substantial ultimate profit in a highly speculative venture may be sufficient to indicate that the activity is engaged *27 in for profit even though only losses are generated, sec. 1.183-2(b)(7), Income Tax Regs., we are not persuaded from the record in these cases that a substantial ultimate profit was more than a remote dream. The facts in the instant cases indicate that petitioner derived personal pleasure from his travels during the years in issue. Although petitioner contends that his hotel activity and related travel were not recreational in nature and his sole motivation for engaging in the activity was to earn a profit, we find that petitioner's hotel activity involved recreational aspects. Petitioner traveled to resorts around the world in pursuit of his hotel activity. Over half of petitioners' claimed Schedule C deductions were for travel and entertainment. We note that a taxpayer's lack of substantial income or capital from sources other than the activity may indicate that an activity is engaged in for profit. Sec. 1.183-2(b)(8), Income Tax Regs. The record does not indicate that petitioner had great wealth during the period in issue. The record does not even disclose the sources from which petitioner hoped to finance his proposals for hotel activities. However, the petitioners' tax *28 returns show that petitioner Romana J. Furey was employed as a flight attendant throughout the years in question, and petitioner repeatedly referred to his modest life style. He did not provide detailed information concerning his financial resources, except for what is disclosed on the tax returns. The record with respect to petitioners' income or assets is inconclusive under the circumstances of these cases. Based on the evidence presented, we hold that petitioner did not engage in the hotel activity with the actual and honest objective of earning a profit during the years in issue. In reaching this conclusion we were particularly influenced by the consistent history of losses from petitioner's activity and the lack of evidence in the record showing that petitioner investigated or evaluated the factors affecting the profitability of his overall operation. Petitioners are entitled to deduct expenses of an activity not engaged in for profit to the extent they are substantiated and do not exceed gross receipts. Secs. 183(b)(2), 6001. Petitioners reported Schedule C gross receipts in the amount of $ 2,500 for 1989. Respondent stipulated that petitioners documented $ 7,168 of *29 their claimed 1989 Schedule C expenses. Therefore, under section 183(b)(2), petitioners are entitled to Schedule C deductions in the amount of $ 2,500 for 1989. Petitioners are not entitled to any Schedule C deductions or losses for the remaining years in issue because they had no Schedule C gross receipts during those years. Although petitioners claimed deductions for taxes and interest during some of the years in issue, petitioners failed to substantiate those claimed deductions. Therefore, they are not entitled to deduct those expenses under sections 163, 164, or 183(b)(1). Sec. 6001. 2. Nonbusiness Bad Debt
On Schedule D of their 1988 joint Federal income tax return, petitioners reported a nonbusiness bad debt in the amount of $ 13,500. In accordance with sections 166(d)(1), 1211 and 1212, petitioners claimed a short-term capital loss with respect to the reported nonbusiness bad debt in the amount of $ 3,000 on their 1988 return. Thereafter, petitioners reported capital losses in the amounts of $ 1,956, [5] *30 $ 3,000, and $ 3,000 on their joint Federal income tax returns for 1989, 1990, and 1991, respectively. [6]
Petitioner testified that the reported nonbusiness bad debt arose from loans he made to Martin Burke (Burke) prior to 1985. According to petitioner, Burke was a condominium developer in Kauai, Hawaii. Sometime before 1984, Burke encountered financial difficulties. Petitioner testified that at that time he "hired" Burke. Petitioner's testimony indicates that for a number of years prior to 1984, Burke coordinated Hawaiian tour groups for petitioner. Petitioner also testified that, while in petitioner's employ, Burke borrowed unspecified sums of money from petitioner. Petitioner testified that in 1984, he advanced an additional $ 3,000 to Burke and asked Burke to execute a note evidencing the alleged transfer of funds over the years. Burke signed a demand note dated June 6, 1984, in the amount of $ 13,000 which provided for interest at an annual rate of 10 percent. As of the time of trial, Burke had not repaid the note or paid any interest to *31 petitioner in connection with the note. Petitioner did not introduce any canceled checks or other evidence that he had advanced funds to Burke. In letters dated November 18, 1986, and August 14, 1987, Burke informed petitioner that he was having financial difficulties. The 1987 letter specifically states: "I am broke, busted, wiped out!" Based upon those letters, telephone conversations, and personal visits with Burke, in 1988, petitioner concluded that he would not receive the funds which he had advanced to Burke. Petitioner reported a nonbusiness bad debt in the amount of $ 13,500 [7] on petitioners' 1988 joint Federal income tax return. Petitioners contend that the advances made to Burke in 1984 and years prior to 1984 were loans that became worthless in 1988, and that they are entitled to a nonbusiness bad debt deduction under section *32 166(d)(1)(B). Respondent contends that petitioners have not demonstrated that any advances to Burke were loans. Respondent further contends that, even if any such advances were bona fide loans, petitioners have not demonstrated that such loans became worthless in 1988. Section 166(a) provides that a taxpayer may deduct a bad debt in full in the year it becomes worthless. Under section 166(d)(1)(B), worthless nonbusiness bad debts are treated as short-term capital losses. See sec. 1222(2). "Only a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Sec. 1.166-1(c), Income Tax Regs. Petitioners have the burden of establishing that the advances were bona fide loans and that they became worthless in 1988. Rule 142(a); Crown v. Commissioner, 77 T.C. 582, 598 (1981). Whether a bona fide debtor-creditor relationship exists is a question of fact to be determined upon a consideration of all the facts and circumstances. Fisher v. Commissioner, 54 T.C. 905, 909 (1970). *33 An essential consideration here is whether any payments to Burke were made with a reasonable expectation, belief, and intention that petitioner would be repaid in light of the economic realities of the situation. Id. at 909-910. Among the common factors that are considered in determining whether there was a reasonable expectation, belief, and intention of repayment are: (1) Whether a note or other evidence of indebtedness exists; (2) whether interest is charged; (3) whether there is a fixed schedule for repayments; (4) whether any security or collateral is requested; (5) whether a demand for repayment has been made; (6) whether any repayments have been made; and (7) whether the borrower was solvent at the time of the loan. See Mayhew v. Commissioner, T.C. Memo. 1994-310, and cases cited therein. Petitioners contend that the advances were bona fide loans because there was a promissory note from petitioner to Burke, petitioners requested repayment, and there was no evidence that Burke was insolvent when the advances were made. Petitioner testified that he advanced the money to Burke over the years "to be helpful", and *34 that in 1984 he advanced $ 3,000 to Burke after Burke informed petitioner that he was going to be evicted from his home. The record indicates, that when the advances were made, especially the advance in 1984, Burke may well have been insolvent. See Fisher v. Commissioner, supra at 910-911. We agree with respondent that petitioners have not established that petitioner Bernard A. Furey advanced funds to Burke with a reasonable expectation, belief, and intention that he would be repaid. Petitioner's advances, if any, to Burke are not satisfactorily explained. On this record, we hold that any such advances were not bona fide loans. As a result, we need not consider whether petitioners have proven that the alleged debts became worthless in 1988. 3. Self-Employment Tax for 1989
On Schedule C of their 1989 Federal income tax return, petitioners reported gross receipts in the amount of $ 2,500. On brief, petitioner indicated that he received those funds from Bermuda hotel interests for development of a brochure. Respondent determined that petitioner is liable for self-employment tax on the $ 2,500 reported on Schedule C because he reported *35 self-employment income on petitioners' 1989 Federal income tax return. Section 1401 imposes a tax on the self-employment income of individuals. Self-employment income is defined as the net earnings from self-employment derived by an individual. Sec. 1402(b). In general, net earnings from self-employment means the gross income derived by an individual from any trade or business that he carries on, reduced by allowable deductions attributable thereto. Sec. 1402(a). For purposes of section 1402, a trade or business has the same meaning as in section 162. Sec. 1402(c); Cato v. Commissioner, 99 T.C. 633, 646 (1992). To qualify as a trade or business under section 162, an activity must be engaged in by the taxpayer with an actual and honest objective of making a profit. Beck v. Commissioner, 85 T.C. 557, 569 (1985). Petitioner did not engage in his hotel activity, with an actual and honest objective of making a profit and, therefore, was not in a trade or business for purposes of section 162. Accordingly, petitioner had no net earnings from self-employment during 1989, and he is not liable for self-employment tax for *36 that year. 4. Employee Business Expense Adjustments
On their 1988 and 1989 joint Federal income tax returns, petitioners claimed adjustments to income for alleged employee business expenses of petitioner Romana J. Furey in the amounts of $ 3,444 and $ 3,032, respectively. Respondent disallowed these claimed adjustments. During 1988 and 1989, petitioner Romana J. Furey was a flight attendant. Petitioners have not addressed, either in their briefs or at trial, respondent's disallowance of the claimed employee business expense adjustments. They presented no evidence on this issue. Accordingly, respondent's determination with respect to the claimed employee business expense adjustments is sustained. See Rule 142(a). 5. Negligence Additions to Tax and Penalties
Respondent determined that petitioners are liable for additions to the tax for negligence or intentional disregard of rules or regulations under section 6653(a)(1) and (2) for 1984 and 1985, 6653(a)(1)(A) and (B) for 1986 and 1987, and section 6653(a)(1) for 1988. Respondent also determined that petitioners were liable for the accuracy-related penalty for negligence under section 6662(a) for 1989, 1990, *37 and 1991. Petitioners have the burden of proving that respondent's determination of additions to the tax is erroneous. Luman v. Commissioner, 79 T.C. 846, 860-861 (1982). Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners failed to introduce any evidence that they were not negligent with respect to the claimed employee business expense adjustments or the claimed nonbusiness bad debt deductions. Accordingly, respondent's determination of negligence with respect to those items is sustained. Petitioners contend that they were not negligent in claiming the Schedule C deductions with respect to petitioner's hotel activity for the years in issue because petitioners' returns were reviewed by the Internal Revenue Service for 1981 and 1982, and the returns were accepted without change with respect to similar claimed Schedule C deductions. Petitioners failed to show that the facts and circumstances surrounding their 1981 and 1982 returns are the same as the facts and circumstances *38 of the years in issue. For example, in years prior to 1984 petitioner claims to have conducted his activities through corporate entities. In addition, the record indicates that prior to 1984, petitioner engaged in activities that differed from the activities during the years in issue. Petitioners also maintain that they are not liable for the additions to tax equal to 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence under section 6653(a)(2) for 1984 and 1985, and section 6653(a)(1)(B) for 1986 and 1987. Petitioners contend that they are not liable for those additions to tax because the Internal Revenue Service delayed resolution of their cases. Petitioners submitted copies of correspondence between petitioners and the IRS. Such correspondence does not indicate that respondent unduly delayed resolution of these cases. We will not look behind the deficiency notice in deciding these cases. Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). Based on this record, petitioners have failed to demonstrate that they were not negligent. Accordingly, we sustain respondent on *39 this issue. 6. Substantial Understatement Addition to Tax
Respondent determined that petitioners are liable for the addition to tax under section 6661 for 1988. Section 6661 provides for an addition to tax in an amount equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax that is assessed after October 21, 1986. Sec. 6661(a); Mailman v. Commissioner, 91 T.C. 1079 (1988); Pallottini v. Commissioner, 90 T.C. 498 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the correct tax or $ 5,000. Petitioners have the burden of proving that respondent's determination of an addition to the tax is erroneous. Luman v. Commissioner, supra at 860-861. Petitioners presented no evidence to rebut respondent's determination that they are liable for the section 6661 addition to tax for 1988. Accordingly, respondent's determination is sustained. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. Docket No. 3039-92 relates to taxable years 1984 through 1989. Docket No. 3677-93 relates to taxable years 1990 and 1991. Upon respondent's motion, which was uncontested by petitioners, these cases were consolidated for trial, briefing, and opinion.↩
2. All section references are to the Internal Revenue Code in effect for the tax years at issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence.↩
2. In the notice of deficiency, respondent determined that petitioners were liable for the addition to tax for negligence under sec. 6653(a)(1)(A). However, sec. 6653(a)(1)(A) was redesignated as sec.6653(a)(1) for taxable years the return of which was due after December 31,1988. Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647,sec. 1015(b)(2)(A), 102 Stat. 3569.↩
3. Petitioner failed to introduce an executed copy of a master franchise agreement with Howard Johnson Co.↩
4. All of the numbers in the chart are rounded to the nearest dollar.↩
1. Subsequent to the issuance of the statutory notices of deficiency,petitioners mailed an amended return, Form 1040X, to respondent for 1988 in which they sought a decrease in the total income reported on their original 1988 return. Amended returns mailed after the issuance of the statutory notices have no effect on the issues to be decided at trial. Miskovsky v. United States, 414 F.2d 954, 955 (3d Cir. 1969); Willis v. Commissioner, T.C.Memo. 1992-332↩.
2. According to the figures reported on their 1989 return, petitioners should have reported a net loss in the amount of $ 14,074.↩
5. On their 1989 return, petitioners offset a claimed $ 3,000 capital loss carryover against a long-term capital gain in the amount of $ 1,043.↩
6. Petitioners' calculations of the capital losses claimed and carry forward of excess losses on their 1988, 1989, 1990, and 1991 returns are unclear.↩
7. The record does not explain the difference in the amount of the demand note, $ 13,000, and the amount that petitioners claimed on their 1988 Federal income tax return, $ 13,500.↩