T.C. Memo. 2004-71

UNITED STATES TAX COURT

B. SURI, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11380-02.                    Filed March 18, 2004.

B. Suri, pro se.

Gerard Mackey, for respondent.

MEMORANDUM OPINION

COHEN, Judge:  Respondent determined a deficiency of
$169,586 in petitioner's Federal income taxes for 1999 and
additions to tax under sections 6651(a)(1), 6651(a)(2), and
6654(a).  After concessions, respondent now asserts that
petitioner has a deficiency in income tax for 1999 of $24,860 and
is liable for an addition to tax under section 6651(a)(1) of

$6,215.  Respondent concedes that petitioner is not liable for the addition to tax under section 6651(a)(2) or under section 6654.

The issues for decision are whether petitioner is entitled to a deduction under section 166 for a bad debt loss in 1999; whether petitioner is entitled to an interest expense deduction under section 163; whether petitioner is liable for the addition to tax for failure to file under section 6651(a)(1); and whether a penalty should be awarded to the United States under section 6673 by reason of petitioner's failure to exhaust his administrative remedies.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Correspondence and communications between the parties are set forth in respondent's motion to compel production of documents and motion under section 6673.  Petitioner resided in New York, New York, at the time that he filed his petition.

Petitioner was not in a trade or business during 1999 but received income as a result of investments.  In 1999, petitioner

received $160,321.90 in long-term capital gains, incurred $1,747.11 in short-term capital losses, and received $1,744.71 in ordinary dividends.  Petitioner incurred and paid $12,575.47 in investment interest expenses in 1999.

Petitioner's 1999 income tax return was due, pursuant to an extension, on August 15, 2000.  Petitioner did not file his 1999 income tax return by August 15, 2000, or at any time prior to June 15, 2003, as set forth below.  The notice of deficiency in this case was sent on April 9, 2002.  The notice was based on total income reported to the Internal Revenue Service (IRS) by financial institutions with which petitioner did business.  On July 8, 2002, petitioner filed his petition, in which he claimed that there was no tax due for 1999.

On September 2, 2002, respondent's Appeals officer wrote to petitioner asking petitioner to set up a conference for possible settlement of this case.  Petitioner did not respond to the letter.  On January 7, 2003, the Appeals officer again wrote to petitioner asking that petitioner call Appeals or send the Appeals officer information that supported petitioner's case.

On January 14, 2003, this case was set for trial at the trial session of the Court in New York, New York, beginning on June 16, 2003.  Attached to the notice of trial was the Court's Standing Pre-Trial Order that provided, among other things:

> You are expected to begin discussions as soon as practicable for purposes of settlement and/or

preparation of a stipulation of facts. Valuation cases and reasonable compensation cases are generally susceptible of settlement, and the Court expects the parties to negotiate in good faith with this objective in mind. All minor issues should be settled so that the Court can focus on the issue(s) needing a Court decision.

\* \* \* \* \* \* \*

ORDERED that all facts shall be stipulated to the maximum extent possible. All documentary and written evidence shall be marked and stipulated in accordance with Rule 91(b), unless the evidence is to be used to impeach the credibility of a witness. Objections may be preserved in the stipulation. If a complete stipulation of facts is not ready for submission at trial, and if the Court determines that this is the result of either party's failure to fully cooperate in the preparation thereof, the Court may order sanctions against the uncooperative party. Any documents or materials which a party expects to utilize in the event of trial (except for impeachment), but which are not stipulated, shall be identified in writing and exchanged by the parties at least 15 days before the first day of the trial session. The Court may refuse to receive in evidence any document or material not so stipulated or exchanged, unless otherwise agreed by the parties or allowed by the Court for good cause shown. \* \* \*

On January 16, 2003, petitioner and the Appeals officer assigned to the case discussed petitioner's tax liability. Petitioner indicated that he would provide information to the Appeals officer to support his contention that he did not owe any tax. On January 17, 2003, pursuant to Branerton Corp. v. Commissioner, 61 T.C. 691 (1974), respondent's counsel invited petitioner to a conference on February 13, 2003, at respondent's office and informally requested that petitioner produce certain documents.

On February 3, 2003, the Appeals officer again wrote to petitioner to say that he had not received the information he requested; the Appeals officer gave petitioner another 10 days to supply the information.  Petitioner failed to respond to the Appeals officer's letter of February 3, 2003.  Petitioner failed to attend the proposed "Branerton" conference scheduled by respondent's counsel for February 13, 2003, failed to furnish respondent with the documents requested, and failed to contact respondent for the purpose of rescheduling the conference.

On March 24, 2003, pursuant to Rule 72, respondent served on petitioner Respondent's Request for Production of Documents.  None of the requested documents were provided to respondent in response to this request.  On May 5, 2003, respondent filed a motion to compel petitioner to produce the requested documents.  On May 6, 2003, the Court granted respondent's motion to compel the production of documents and ordered petitioner to produce those documents by May 20, 2003.  To the extent that respondent's motion requested sanctions if petitioner failed to comply with the Court's order, the motion was set for hearing on June 16, 2003.  Petitioner did not produce the documents by May 20, 2003, as ordered by the Court, or at any time prior to the trial date.

On June 3, 2003, respondent's counsel sent to petitioner a proposed stipulation of facts and a letter requesting that petitioner either sign the stipulation or call respondent's

counsel immediately to discuss his concerns.  Petitioner did not respond to this letter.

On June 12, 2003, respondent's counsel called petitioner and left a message asking that petitioner telephone to discuss the stipulation of facts.  On June 12, 2003, petitioner left respondent's counsel a message to the effect that he would not sign the stipulation because he did not agree with it.  On June 12, 2003, respondent's counsel left petitioner a message asking that petitioner meet at 10:00 a.m. on June 13, 2003, to prepare a stipulation of facts that petitioner would be willing to sign.  On June 13, 2003, petitioner telephoned respondent in the afternoon and left a message that he was unable to meet that morning because he had just received respondent's message requesting the meeting.

On Sunday, June 15, 2003, petitioner submitted to respondent a Form 1040, U.S. Individual Income Tax Return, for 1999.  In addition to claiming basis in the stock that he had sold and that had been determined in the notice of deficiency to result in capital gains, petitioner claimed bad debt losses of $260,770.

When the case was called for trial on June 16, 2003, petitioner presented for the first time various documents that had been requested by respondent and ordered produced by the Court's order of May 6, 2003.  He did not present any canceled checks supporting the alleged bad debt losses.  He presented

purported third-party promissory notes dated December 28, 1998, and January 7, 1999, referring to payment on December 31, 1999, for "any and all" loans or moneys received during 1999, without any specific amounts mentioned. Respondent had no opportunity to contact the alleged obligors on the notes. The Court granted respondent's motion for sanctions and ordered that petitioner would not be allowed to introduce into evidence documents that had not been timely produced in accordance with the Standing Pre-Trial Order or the order granting respondent's motion to compel production.

The case was recalled for trial on June 19, 2003, at which time the parties filed a Stipulation of Facts resolving all issues other than those set forth above. After several delays, on December 15, 2003, petitioner filed an answering brief to which he attached copies of canceled checks dated in 1999 that purportedly support the bad debt expense claimed.

## Discussion

### Bad Debt Expense

In order to be eligible for a bad debt deduction for debts that became worthless, petitioner must prove that a bona fide debt existed and that the debt became worthless in the year in which he claimed the deduction. Sec. 166(d); sec. 1.166-5(a)(2), Income Tax Regs.

The thrust of petitioner's testimony is that he made loans to virtual strangers over the course of 1999, through December 1999, pursuant to "promissory notes" that did not specify any amounts due, in order to earn favorable interest. Petitioner testified as follows:

> in '97 and '98 and '99 I was actively involved in it and when I found the market was going down I started liquidating and fortunately I had the opportunity to meet this group and I thought that rather than putting my money in the bank making two percent or three percent I had an opportunity that they would give me six percent and I could therefore secure the fund for myself.
>
> Then later on if something panned out where they went IPO or something else I might be able to have some opportunity there. So I asked them to provide me a promissory note which they did for '99 on the basis that I would provide them the funds as they needed it and as I had the available when I had already cashed some of my stocks. * * *

Petitioner then claims that, in early 2000, he concluded that the alleged "loans" were worthless.

Whether a bona fide debtor-creditor relationship exists is a question of fact to be determined upon consideration of all of the facts and circumstances. Fisher v. Commissioner, 54 T.C. 905, 909 (1970). Among the factors that are commonly considered in deciding whether there was a reasonable expectation, belief, and intention of repayment are: (1) Whether a note or other evidence of indebtedness exists, Clark v. Commissioner, 18 T.C. 780, 783 (1952), affd. 205 F.2d 353 (2d Cir. 1953); (2) whether interest is charged, id.; (3) whether there is a fixed schedule

for repayments, id.; (4) whether any security or collateral is requested, Zimmerman v. United States, 318 F.2d 611, 613 (9th Cir. 1963); (5) whether a demand for repayment has been made, Montgomery v. United States, 87 Ct. Cl. 218, 23 F. Supp. 130 (1938); (6) whether any repayments have been made, Estate of Ames v. Commissioner, a Memorandum Opinion of this Court dated Feb. 7, 1946; and (7) whether the borrower was solvent at the time of the loan, Jewell Ridge Coal Corp. v. Commissioner, 318 F.2d 695, 699 (4th Cir. 1963), affg. T.C. Memo. 1962-194.  For reasons set forth above, the belatedly tendered notes were not reliable and were not received in evidence.  There was no evidence offered with respect to the other factors.

Respondent argues, and we agree, that it appears from petitioner's testimony that the funds advanced as claimed by petitioner were investments, not bona fide loans.  There was no apparent investigation or evidence of the financial solvency of the alleged borrowers or evidence that they intended to repay petitioner for the advances.  In addition, petitioner presented no objective evidence that the advances became worthless by the end of 1999.  It is improbable that he would have continued to lend money through December 1999 and that the advances simultaneously became worthless.

Petitioner did not disclose to respondent or present any information concerning the purported loans until the day of

trial, thus precluding any reasonable investigation of events that occurred 4 years earlier.  Petitioner's testimony at trial was vague and conclusory, and he attempted to add additional details only in his answering brief, after respondent pointed out the defects in his case.  Although he claimed at trial that he had no money to employ counsel or a collection agency to pursue collection, he asserted in his posttrial brief that he had employed counsel and a collection agency.  There is no evidence or even suggestion as to the dates on which collection efforts were pursued.  The statements contained in petitioner's answering brief, of course, cannot be considered as evidence.  Rule 143(b).  His inconsistent assertions are, however, an indication of the unreliability of his testimony at trial.  In any event, none of the belated submissions would cure the gaps in petitioner's evidence with respect to the bona fides of the alleged loans, the capacity and intent of the alleged debtors, or the worthlessness of the alleged debts during the same year in which they were allegedly created.  Petitioner's claims are improbable, and we cannot accept them.  Geiger v. Commissioner, 440 F.2d 688, 689 (9th Cir. 1971), affg. T.C. Memo. 1969-159.

Investment Interest Expense

Section 163 allows a deduction for interest paid during the taxable year.  Section 163(d), however, limits the amount of the investment interest that is deductible by individual taxpayers to

net investment income.  Petitioner had net investment income of $1,744 in 1999.

Under section 163(d)(4)(B), a taxpayer may elect to increase net investment income by net capital gain from property held for investment.  The election, however, must be made on or before the due date, including extensions, of the tax return for the year in which the net capital gain is recognized.  Sec. 1.163(d)-1, Income Tax Regs.  Because petitioner did not file a timely return, he is not entitled to the election.

Petitioner has offered no evidence or argument with respect to respondent's disallowance of his claimed investment interest expense.  Respondent's determination in this regard is sustained.

Section 6651(a)

Petitioner contends that he was not required to file a tax return for 1999 because no tax was due.  The stipulated amounts of income that he received during that year, however, far exceed the threshold requirements for individuals to file returns. Respondent has carried the burden of production imposed by section 7491(c).  See Higbee v. Commissioner, 116 T.C. 438, 447 (2001).  In order to avoid the penalty under section 6651(a), petitioner must establish reasonable cause for his failure to file.  His purported belief, clearly mistaken, is not reasonable cause.  There is no indication that petitioner sought competent professional advice with respect to his 1999 tax return.  Even if

he had, his delinquency would not necessarily be excused.  See, e.g., United States v. Boyle, 469 U.S. 241, 251-252 (1985); see also Adams v. Commissioner, T.C. Memo. 1982-223, affd. without published opinion 732 F.2d 159 (7th Cir. 1984).  Petitioner did not have reasonable cause for his failure to file his return on a timely basis, and he is liable for the addition to tax under section 6651(a)(1).

Failure To Exhaust Administrative Remedies

Section 6673(a) provides for a penalty, in an amount not in excess of $25,000, whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or "the taxpayer unreasonably failed to pursue available administrative remedies".  An award under this section may be appropriate if a taxpayer fails to comply with respondent's request for records made prior to trial when, had he produced those records when requested, there would have been fewer disputed issues at the commencement of trial.  See Edwards v. Commissioner, T.C. Memo. 2002-169; and Edwards v. Commissioner, T.C. Memo. 2003-149 ($24,000 penalty imposed where the taxpayer took frivolous and groundless positions and unreasonably failed to pursue available administrative remedies).  A sanction is also appropriate under section 6673 where a taxpayer's procrastination has increased the cost of litigation.  See Griest v. Commissioner, T.C. Memo. 1995-165 ($1,000 penalty

awarded where a case was settled at the time of trial after the taxpayer substantiated his basis to reduce sales proceeds determined to be income).

The record in this case establishes repeated failures of petitioner to meet with the IRS or respondent's counsel and to provide the information that ultimately led to the stipulation and settlement of various items of income in this case. There was no stipulation with respect to the claimed bad debt expenses because petitioner did not raise them prior to trial, tendered purported notes only the day of trial, and tendered copies of canceled checks 6 months after trial as an attachment to his answering brief. Petitioner's failure to produce the documentary materials was a violation of the Court's Standing Pre-Trial Order and the specific order of May 6, 2003, granting respondent's motion to compel production of documents. Petitioner's only explanation is that he was busy and that he did the same thing in relation to a prior case that was settled with a determination that he owed no additional taxes for 1994 and 1998. Petitioner's violation of the Court's orders and Rules on a prior occasion, however, is not an excuse for his repeating that conduct. The record supports the inference that petitioner maintained this action primarily for delay. In any event, the record is clear that he unreasonably failed to pursue available administrative remedies. The facts of this case are indistinguishable from

those in <u>Griest v. Commissioner</u>, <u>supra</u>.  Our decision will require petitioner to pay to the United States a penalty of $1,000.

To reflect the concessions by respondent and the foregoing,

<u>An appropriate order and decision will be entered under Rule 155.</u>