Hans ZIMMERMAN and Clara Zimmer-
man, Appellants,

v.

UNITED STATES of America and Dis-
trict Director of Internal Reve-
nue, Appellees.

No. 18416.

United States Court of Appeals
Ninth Circuit.

June 21, 1963.

Kenneth E. Young, Honolulu, Hawaii, for appellants.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Alan D. Pekelner, Attys., Dept. of Justice, Washington, D. C.; and Herman T. F. Lum, U. S. Atty., Honolulu, Hawaii, for appellee.

Before HAMLEY, HAMLIN and DUNIWAY, Circuit Judges.

HAMLIN, Circuit Judge.

Hans and Clara Zimmerman, appellants herein, commenced an action in the United States District Court for the District of Hawaii for the refund of income taxes in the amount of $13,180.66. Their claim for a refund was based upon the refusal of appellees to allow as a bad debt deduction under section 166(a) (1) of the Internal Revenue Code of 1954 (26 U.S.C. § 166(a) (1)) [1] money allegedly

1. Section 166(a) (1) provides as follows: "There shall be allowed as a deduction any debt which becomes worthless within the taxable year."

loaned by them to the National Medical Society during the years 1944 through 1955. The action was tried by the court and a judgment was entered in favor of appellees.

■ Only a "bona fide debt", i. e., one which "arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money," qualifies for deduction under section 166 of the Internal Revenue Code of 1954.[2] The issue on this appeal is whether such a debtor-creditor relationship existed between Dr. Zimmerman and the National Medical Society.

The facts will be briefly summarized here.[3] At the outbreak of World War II, Dr. Zimmerman, a naturopathic physician, who at the time was practicing his profession in Honolulu, was shipped to the United States. He moved to Chicago, Illinois, where, in 1943, he became interested in organizing a national organization of all the healing professions. As a result of his efforts, the National Medical Society was incorporated as a non-profit organization in Illinois in November, 1943, and in Washington, D. C., in 1945.

At its inception, the Society had no funds. Dr. Zimmerman testified that he offered to advance money to the Society "until the time when the organization could carry itself financially, and then that the organization should repay me at whatever amount was possible without jeopardizing the organization." In their complaint, appellants claimed that $41,-247.73 so advanced had not been repaid as of the end of 1955.

Repayment was to be made out of dues collected from members of the Society. Although it had been expected that the Society would have 50,000 members, it appears to be undisputed that the regular dues paying membership of the Society never exceeded "three low figures." In 1949, when the income of the Society amounted to only $1,429, appellants advanced $11,694.70 to the Society. Substantial advances were also made by appellants in each of the years 1950 through 1954.

In his 1946, 1951, 1952, 1953 and 1955 income tax returns, Dr. Zimmerman listed portions of the $41,247.73 as "contributions" to the Society. Apparently, there was no correlation between the actual advances made in those years and the sums listed as contributions.

The district court found that the members and directors of the Society "were filled with good intentions to repay Dr. Zimmerman," but nevertheless concluded that the advances were not "debts" within the meaning of that term as used in section 166 of the Code.

■ Appellants contend that the district court's conclusion that a debt did not exist was erroneously based solely upon the fact that there was no fixed date of repayment. The opinion of the court, however, reveals that several other factors were considered by the court in arriving at its decision. In the first place, the district court recognized the general rule that a debt does not arise for the purpose of section 166 where the obligation to repay is subject to a contingency that has not occurred.[4] This rule was particularly applicable in this case. Here there was no absolute liability to repay. The obligation to repay was contingent upon the Society being able to "carry itself financially" and then repayment was to be made only in such amounts as would not jeopardize the organization. The contingency was vague and indefinite and the evidence does not reveal who was to

---

2. See Treas.Reg., § 1.166–1(c).

3. The facts are reported in greater detail in 209 F.Supp. 312 (D.C.Hawaii 1962).

4. See, e. g., United States v. Virgin, 230 F. 2d 880, 881–882 (5th Cir. 1956) ; Bercaw v. Commissioner of Internal Revenue, 165 F.2d 521, 525 (4th Cir. 1948) ; Alexander

& Baldwin v. Kanne, 190 F.2d 153, 155 (9th Cir. 1951) ; Milton Bradley Co. v. United States, 146 F.2d 541, 542–543 (1st Cir. 1944) ; Lucia Chase Ewing v. Commissioner of Internal Revenue, 20 T.C. 216, 229 (1953) ; Evans Clark v. Commissioner of Internal Revenue, 18 T.C. 780, 783–784 (1952).

resolve when or whether the contingency had occurred. It is clear from the evidence that under any interpretation that could be given to the quoted language, the Society never was in a position to repay the money advanced to it by Dr. Zimmerman.[5] The fact that the obligation to repay was subject to a contingency which did not occur alone precluded a finding that a bona fide debt (business or non-business) existed.

 Apart from the fact that the obligation to repay was subject to a contingency, there were several other facts which, when considered together, would prevent us from holding that appellants had established as a matter of law the existence of a debtor-creditor relationship, e. g., absence of a reasonably fixed maturity date, no note or other evidence of indebtedness, no provision for interest or security, and no evidence that Dr. Zimmerman ever made a demand for repayment upon the Society. The district court considered the fact that Dr. Zimmerman listed portions of the money advanced as contributions on his income tax returns as indicative of the fact that a debtor-creditor relationship did not exist. We feel that the manner in which the advances were reported was certainly relevant and cannot say that the inference drawn by the court from this fact was clearly erroneous. The court also found that Dr. Zimmerman continued to advance money to the Society far in excess of its income long after he could have reasonably believed that there was any possibility of repayment. This fact was also relevant to the determination as to whether a debtor-creditor relationship existed between the Doctor and the Society. Appellants' contention that this finding was not supported by the evidence is without merit.

Finally, we conclude that the district court did not err in denying appellants' motion for a new trial and to reopen judgment.

The judgment of the district court is affirmed.

5. Dr. Zimmerman testified that he had in fact been repaid $10,000 of the money advanced by him, but did not specify when the repayment had been made. In his motion for a new trial and to reopen judgment, he offered to prove that he had received in February, 1950, "from the Bliss-Bates Estate (through the National Medical Society)" cash in the amount of $10,543.63 and jewelry appraised at a value of $277 to be credited to his advance account. The fortuitous receipt of money by the Society from a decedent's estate did not establish that the Society had reached the point where it was able to "carry itself financially."