J. Julian Bowman and Edith C. Bowman v. Commissioner.
Bowman v. Commissioner
Docket No. 554-64.
United States Tax Court
T.C. Memo 1966-108; 1966 Tax Ct. Memo LEXIS 174; 25 T.C.M. (CCH) 568; T.C.M. (RIA) 66108; May 25, 1966
*174 Held: That petitioners are not entitled to a nonbusiness bad debt deduction for unreimbursed advancements which were used to pay the compaign expenses of the Citizens Committee Against Fluoridation, Inc., when repayment was impliedly contingent upon the receipt of sufficient contributions and no features of an enforceable debtor-creditor relationship were present. Petitioners have failed to prove either that a bona fide debt existed or that it became worthless in 1960. Harry Stickney, 1616 Central Trust Tower, Cincinnati, Ohio, for the petitioners. Rodney G. Haworth, for the respondent. HOYT
Memorandum Findings *175 of Fact and Opinion HOYT, Judge: Respondent determined a deficiency of $2,265.97 in income taxes of the petitioners for 1960. Petitioners have conceded that a charitable-contribution deduction taken on their 1960 income tax return in the amount of $4,594.55 was improper. Petitioners contend, however, that $3,816.79 of the amount disallowed as a charitable deduction was a properly deductible nonbusiness bad debt in 1960. Thus, the only issue in controversy is whether respondent was correct in disallowing the entire amount deducted on the alternative theory that the deduction also failed to qualify as a bad debt loss. Findings of Fact Petitioners are husband and wife and are residents of Cincinnati, Ohio. Their joint return for the year involved was filed with the district director of internal revenue, Cincinnati, Ohio. Petitioners (hereinafter sometimes referred to as Julian and Edith), were involved in the affairs of a nonprofit corporation known as the Citizens Committee Against Fluoridation, Inc., (hereinafter referred to as the Committee). The Committee was organized on October 26, 1960, under the laws of Ohio for the following purpose, as stated in its Articles of Incorporation: *176 "* * * to retain unmedicated drinking water, to inform the public of facts relative to fluoridated drinking water, and to engage in such other lawful purposes as the Board of Trustees may from time to time determine." The actual activity of the Committee was to work for the defeat of a fluoridation referendum in Cincinnati and Hamilton County, in November of 1960. Julian was treasurer of the Committee, one of its incorporators, a trustee, and its statutory agent. Edith was originally co-chairman of the Committee and eventually became chairman. In October when the petitioners were asked to head the Committee, there was insufficient time before the election in November to collect the monies necessary to put on a campaign. The Committee was absolutely without funds but did succeed in raising some by contributions. Petitioners made substantial contributions themselves. In addition, expenses of the Committee totaling in excess of $5,000 were paid by petitioners from their personal funds. Petitioners understood from other members of the Committee that they would be reimbursed for these advances. By the end of 1960, the Committee had reimbursed petitioners for $1,568.63, leaving petitioners *177 with substantial unrecovered advancements. It is petitioners' contention that the unrecovered amount constituted a debt which became worthless in 1960. Petitioners also advanced personal funds in the amount of $269.38 in 1961 as payment for certain expenses incurred by the Committee during the campaign. Repayments of $309.27 were made in 1962 on the advancements, with the last payment occurring on May 14, 1962, at which time the Committee closed its bank account and petitioners received the balance. Petitioners undertook the responsibility of handling the financial affairs of the Committee with the understanding that advancements made in the form of payment of the Committee's campaign expenses would be repaid. The sources of repayments were to be contributions to the Committee before and after the election and contributions obtained by the circularization of the national contributors' list of the Greater Committee of New York Against Fluoridation. On November 21, 1960, after the election campaign was concluded, the Committee held a post-election meeting, the secretary's minutes of which reflect, inter alia, the following: The Treasurer's report showed campaign expenses of $9,296, *178 and donations of $1,896, a deficit of $7,400 which amount Mr. Bowman generously paid for us. Many suggestions were given as to ways and means of asking for donations from outsiders to our Committee in order to reimburse Mr. Bowman of this large sum of money. These sources proved to be inadequate and petitioners were never fully reimbursed. In their 1960 joint return, petitioners deducted $4,594.55 as a charitable contribution to the Committee. Julian testified at trial that the accountants erred in claiming this amount as a charitable contribution and that the error was not discovered at the time the return was filed. The amount now claimed as a deductible nonbusiness bad debt for 1960 is less than the amount formerly deducted. Petitioners attribute the reduction to their decision to limit their claim to the portion of the advancements represented by alleged actual receipts for expenditures incurred on behalf of the Committee. However, no canceled checks, receipts or other documentary evidence were offered or introduced at trial. There were no notes executed or given for the alleged loans; there was no maturity date for repayment; and no security nor provision for interest. *179 Opinion Petitioners contend that their combined advancements to the Committee in the amount of $3,816.79 during 1960 were properly deductible nonbusiness bad debts for the 1960 taxable year. The provision allowing a noncorporate taxpayer to make such a deduction is section 166(d)(1)(B), Internal Revenue Code of 1954, which reads as follows: (d) Nonbusiness Debts. - (1) General rule. - In the case of a taxpayer other than a corporation - * * *
(B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. With respect to what qualifies as a debt under section 166 of the Code, we agree with section 1.166-1(c) of the Regulations which states, in part: * * * Only a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a debtorcreditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. * * * Thus, it would seem that the first hurdle confronting the petitioners in this case is to establish *180 that the advancements constituted a bona fide debt. Petitioners have the burden of proof on this issue and viewing all the evidence of record, we can only conclude that petitioners have failed to sustain their burden. Even if we view the evidence in the light most favorable to petitioners, we could not find that a definite amount was advanced with an unqualified expectation of repayment. It has not been established by the evidence that a debt was owed by identifiable persons or corporate entities for the petitioners' advancements. Our determination that a debtor-creditor relationship did not exist is based upon such factors as the absence of a note or other evidence of indebtedness, no provision for interest or security, absence of a reasonably fixed maturity date, and the lack of evidence that petitioners ever made a demand for repayment. See Zimmerman v. United States, 318 F. 2d 611, 613 (C.A. 9, 1963). Furthermore, it is well accepted that a debt does not arise for the purpose of section 166 where the obligation to repay is subject to a contingency that has not occurred. Evans Clark, 18 T.C. 780, 783-784 (1952), affirmed per curiam, 205 F. 2d 353 *181 (C.A. 2, 1953). This rule is particularly applicable to the present case since there was no absolute liability to repay. It is established by the evidence that repayment was to come from contributions secured subsequent to the advancements. Although petitioners were assured by several individuals that complete reimbursement would occur, there is no evidence that the Committee or any individual personally obligated himself to repay the advancements in any event. The petitioners failed to present any evidence tending to prove the existence of absolute liability for the purported debt. No other members of the Committee were called as witnesses, and Julian provided the only trial testimony. Even Julian's testimony was confused and vague; it seemed to indicate that although he expected full reimbursement, there was no absolute right to repayment enforceable against the Committee, individuals associated therewith, or any other persons or corporate entities. It was apparently understood that repayment would come from contributions, and Julian was convinced that this source would be adequate for such purpose. His expectations were not fulfilled. The petitioners' advancements were not repaid *182 because subsequent contributions provided insufficient funds. On all of the evidence of record, we conclude that full repayment was subject to a contingency, receipt of adequate contributions, and that this contingency failed to occur. As previously stated, a contingent debt does not constitute a debt for purposes of section 166. Thus, it must be held that a qualifying debt never existed, and the petitioners are not entitled to a deduction for their unrecovered advancements. It is also argued by respondent that the purported debt did not become worthless in 1960 because advancements and repayments occurred in later years, and that the deduction should be disallowed on this ground. We agree with respondent. Petitioners have failed to carry their burden of proving worthlessness in 1960. As reflected by the minutes of the Committee meeting held on November 21, 1960: "Many suggestions were given as to ways and means of asking for donations * * * to reimburse Mr. Bowman of this large sum of money." The evidence is totally inadequate to establish that by December 31st of that year these efforts, barely a month old, would not be entirely successful. Had sufficient contributions been collected *183 in 1961, petitioners would no doubt have been repaid in full. As our findings indicate, petitioners advanced further funds in 1961 and received further repayments in 1962, in which year the Committee closed its bank account and petitioners received the balance. Respondent's determination that the deduction sought did not qualify as a nonbusiness bad debt in accordance with section 166 of the Code, is presumptively correct, and petitioners have not produced evidence sufficient to overcome this presumption. Decision will be entered for the respondent.