T.C. Memo. 2012-123

UNITED STATES TAX COURT

ESTATE OF LOIS L. LOCKETT, a.k.a LOIS L. LOCKETT, DECEASED,
ROBERT W. LOCKETT, JR., EXECUTOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 8922-09, 8940-09.　　　　　Filed April 25, 2012.

Tim A. Tarter, Larry C. Schafer, and Sarah E. Price, for petitioner.

S. Mark Barnes and Rebekah A. Myers, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, Judge: In these consolidated cases,[1] respondent issued two

notices of deficiency, taking inconsistent positions with respect to four

_____

[1]These cases were consolidated for purposes of trial, briefing, and opinion.

transactions. In the notice of deficiency in docket No. 8940-09 respondent determined an $82,745 Federal gift tax deficiency against the Estate of Lois L. Lockett (estate) based upon respondent's position that the four transactions were gifts subject to Federal gift tax. In the notice of deficiency in docket No. 8922-09 respondent determined a $706,110 Federal estate tax deficiency against the estate based upon respondent's position that Mrs. Lockett's gross estate should include the fair market value of assets Mrs. Lockett transferred to a family limited partnership. As part of the later notice of deficiency respondent treats the four transactions as loans and assets of Mrs. Lockett's estate. To further confuse matters, respondent also includes these four transactions as gifts in the calculation of the $706,110 estate tax deficiency. Respondent acknowledges the inconsistent positions taken.

After concessions[2] the issues for decision are: (1) whether transfers of cash to Robert W. Lockett, Jr., and Joseph L. Lockett, Sr., were gifts or loans, and (2)

---

[2]The estate does not contest that portion of the deficiency that corrects the adjusted taxable gifts (Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, line 4) to $1,565,165 and the total gift tax paid (Form 706, front p., l. 7) to $305,866.

whether at the time of Lois L. Lockett's (Mrs. Lockett) death certain assets were held by her individually or were held in a family limited partnership.[3]

FINDINGS OF FACT

1.    Background

Many of the facts have been stipulated and are so found.  The stipulation of facts is incorporated herein by this reference.  Mrs. Lockett was a resident of Arizona when she died testate on October 14, 2004, and her will was probated in that State.  The estate acts through its executor, Robert W. Lockett, Jr. (Robert).  Robert, Mrs. Lockett's son, resided in Arizona when the petitions were filed.

2.    Family Life

Mrs. Lockett was born on May 2, 1912.  She came from a pioneer family that settled in Arizona.  Her parents, Lloyd Case Lakin and Ethel Lakin, were entrepreneurs who formed a number of businesses.  Mrs. Lockett inherited portions of these businesses, including an interest in Lakin Cattle Co. and Lakin Milling Co.  From 1976 through 2000 Mrs. Lockett made gifts, for which Federal gift tax returns were filed and gift taxes paid, of interests in various properties and

---

[3]Unless otherwise indicated, section references are to the Internal Revenue Code (Code), as in effect for the date of Mrs. Lockett's death.  Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded to the nearest dollar.

entities, including Lakin Cattle Co. and Lakin Milling Co. to her children and their spouses. These gifts are not at issue for us to resolve but do figure into the calculation of any estate and gift tax deficiencies to be redetermined.

Mrs. Lockett married Robert W. Lockett, Sr. (Mr. Lockett). Mr. Lockett also came from a pioneer family that settled in Arizona in approximately 1875. The Lockett family purchased land, grew crops, and ventured into a number of business enterprises. Mr. and Mrs. Lockett had two children, Robert and Joseph L. Lockett, Sr. (Joseph). Joseph married Mary E. Lockett (Mary) in 1965 and they had two children, Joseph L. Lockett, Jr., and Patricia Lockett. Joseph and Mary divorced in 1991. Thereafter, Joseph married his second wife, Linda Burke Lockett (Linda). Joseph died on December 22, 2007. He is survived by Linda and his two children. Robert married Karen K. Lockett and they had two children, Meredith Lockett Lamm (Meredith) and Lori Lockett Adam, and a stepchild, Kelly Lovin (Kelly).

3. Estate Planning

Mr. Lockett died on April 18, 1986. His last will established a trust for the benefit of Mrs. Lockett (Trust A), from which she received quarterly income. She was also given the unlimited power to withdraw principal and a general power of

appointment over the trust corpus.  Joseph, Robert, and Mrs. Lockett were named cotrustees of Trust A.

Mrs. Lockett's health gradually declined and by 2000 she had moved into an assisted living facility.  Mary, Mrs. Lockett's ex-daughter-in-law, was a financial planner who had advised Mrs. Lockett and assisted with her financial affairs for a number of years.  David Haga who had represented Mrs. Lockett from 1996, was her estate planning attorney, and Gerald Bernard was her accountant.  On February 11, 2000, Mrs. Lockett created a revocable trust, the Lois L. Lockett Trust (Lockett Trust).  The Lockett Trust document named Mrs. Lockett and Mary as cotrustees. Mary and Mr. Haga also recommended that Mrs. Lockett create a family limited partnership.  The Lockett family being close, Mrs. Lockett decided to involve Joseph, Robert, and Mary in the creation of the partnership.  With so many people involved, a good amount of indecision arose which stalled the orderly creation of the partnership.

4.      Formation of a Limited Liability Limited Partnership

On March 13, 2000, Mr. Bernard filed articles of organization with the State of Arizona for Mariposa Monarch, LLLP, an Arizona limited liability limited partnership (Mariposa).  At that time no decision had been made as to what percentage interest each family member would hold in Mariposa, what assets

would be contributed to Mariposa, or even who would be members. Throughout 2000 and 2001 Mrs. Lockett, Mary, Joseph, Robert, Mr. Haga, and Mr. Bernard discussed the formation of Mariposa. During 2000 and 2001 nothing was done to fund Mariposa.

Mr. Bernard prepared Forms 1065, U.S. Return of Partnership Income, for Mariposa for 2000 and 2001 and reported no income and no activity. Mr. Bernard also prepared Schedules K-1, Partner's Share of Income, Deductions, Credits, etc., for 2000 and 2001 for the partners he believed would be part of Mariposa, namely Joseph, Robert, and Mary as general partners and Mrs. Lockett, Joseph, Robert, and Trust A as limited partners.

In September 2001 Mrs. Lockett and Mary met with Mr. Haga to discuss the details of Mariposa. Mr. Haga had drafted several versions of the partnership agreement that had been reviewed by the Lockett family members. Joseph and Robert had hired an attorney, Robert L. Miller, to represent their interests in the formation of the partnership. Mr. Miller had reviewed the several drafts of the Mariposa partnership agreement and had recommended changes.

On October 12, 2001, Mary wrote a letter signed by herself and Mrs. Lockett to Mr. Haga in reference to their September meeting. In the letter Mary expressed reservations about having Mr. Miller involved in the drafting of the partnership

agreement, essentially requesting that his changes be ignored. Mary also recommended that she be named a general partner so that she could protect Mrs. Lockett's limited partnership interest. Mary recommended a number of other changes and stated that once those changes were made she would encourage Mrs. Lockett to sign the partnership agreement.

Joseph and Robert had always deferred to Mary's judgment when it came to their mother's finances. Mary had been the driving force behind the creation of Mrs. Lockett's estate plan and the formation of Mariposa. However, Joseph and Robert became suspicious of Mary's motives. They moved their mother to a new assisted living facility so that she would be farther away from Mary and closer to them. In January 2002 Joseph and Robert decided to exclude Mary from further involvement in Mrs. Lockett's financial affairs. On March 2, 2002, Mrs. Lockett executed a durable power of attorney removing Mary as her attorney-in-fact and appointing Joseph and Robert in her stead. On that same date, Mrs. Lockett executed a first amendment to the terms of the Lockett Trust removing Mary as cotrustee and appointing Joseph and Robert to serve as cotrustees.

On March 26, 2002, the parties executed the agreement of Mariposa Monarch LLLP (Mariposa agreement), a certificate of limited partnership (certificate), and a statement of qualification for a limited liability limited

partnership for Mariposa Monarch LLLP. The certificate was signed by Joseph and Robert as general partners of Mariposa and filed with the State of Arizona on April 5, 2002. The Mariposa agreement was signed by Mrs. Lockett, Joseph, and Robert individually, and by Mrs. Lockett, Joseph, and Robert as trustees of Trust A. The Mariposa agreement named Joseph and Robert as general partners and Mrs. Lockett, Joseph, Robert, and Trust A as limited partners. Even without Mary's involvement the indecision continued. At the time the Mariposa agreement was signed, Mrs. Lockett, Robert, and Joseph had still not agreed upon initial capital contributions or their percentage interests in Mariposa.

5.    Funding of Mariposa

Soon after the Mariposa agreement was signed, Mrs. Lockett and Trust A began funding the partnership. On May 6, 2002, Trust A transferred $477,383 to Mariposa through its investment adviser, Franklin Templeton Investments. Additionally, on May 10, 2002, Trust A transferred $171,097 of sale proceeds from a land transaction to Mariposa. Finally, on October 29, 2002, the trustees of Trust A deposited a $35,750 check made out to Trust A in Mariposa's bank account. On May 10, 2002, Mrs. Lockett individually transferred $234,959 to Mariposa and on May 21, 2002, through the Lockett Trust transferred an

additional $125,000 in cash to Mariposa. Joseph and Robert made no contributions to Mariposa.

6.     Amendment to Mariposa Agreement

In May 2003 a decision was made to terminate Trust A. The trustees of Trust A executed the Trust A termination agreement effective December 31, 2002, terminating Trust A and distributing its assets to its sole beneficiary, Mrs. Lockett. As a result, Mrs. Lockett became the owner of Trust A's limited partnership interest in Mariposa. The termination of Trust A and distribution of its limited partnership interest to Mrs. Lockett required an amendment to the Mariposa agreement. On or around May 9, 2003, the parties executed the amendment to agreement of limited liability limited partnership of Mariposa Monarch L.L.L.P. (Mariposa Amendment) with an effective date of December 31, 2002. The Mariposa Amendment reflected the fact that Mrs. Lockett was now the sole limited partner of Mariposa but continued to list Joseph and Robert as Mariposa's general partners. Exhibit A of the Mariposa Amendment listed Joseph and Robert as each holding a 0% interest in the partnership and listed Mrs. Lockett as holding 100% of the interest in the partnership. The Mariposa agreement provided that the partnership would dissolve upon the acquisition of all of Mariposa's interests by a single partner.

The certificate of limited partnership and statement of qualification for a limited liability limited partnership for Mariposa Monarch LLLP was also amended to reflect the termination of Trust A and as a result Mrs. Lockett's holding 100% of the limited partnership interest in Mariposa. The amended certificate was signed by Joseph and Robert as general partners and Mrs. Lockett as a limited partner on January 27, 2004, and filed by the Arizona Secretary of State on February 26, 2004. The parties filed annual reports for Mariposa for both 2003 and 2004. Both annual reports were signed by Joseph and Robert as general partners of Mariposa.

7.    Mariposa and Mrs. Lockett's Accounting

In early 2002 Mr. Bernard was let go and Marjorie McClanahan was hired to be Mariposa and Mrs. Lockett's accountant. Mrs. McClanahan filed Forms 1065 for Mariposa for 2002, 2003, and 2004. Robert reviewed and signed all three Forms 1065. The attached Schedules K-1 for 2002 and 2003 listed Joseph, Robert, Mary,[4] Mrs. Lockett, and Trust A as partners but attributed all items of partnership income and deductions to Mrs. Lockett. Thus, Mrs. Lockett reported all of Mariposa's items of income and deductions on her 2002 and 2003 Forms 1040, U.S. Individual Income Tax Return. Schedules K-1 for 2004 listed Joseph and

---

[4]Mary was listed as a partner of Mariposa only for 2002.

Robert as general partners and Mrs. Lockett as the sole limited partner. Mrs. Lockett died on October 14, 2004. As a result, Mrs. McClanahan reported 100% of the first 10 months of the partnership's items of income and deductions to Mrs. Lockett. The remaining two months of the partnership's items of income and expense were reported in equal shares to Joseph and Robert.

8.     Mariposa's Activities

Though Joseph and Robert were listed as general partners of Mariposa, Joseph was not involved in the administration of Mariposa. According to Linda, "Joseph's level of involvement in the administration of Mariposa was minimal.     * * * Joseph was not involved in any aspect of the administration of Mariposa.     * * * Joseph never assisted Mrs. Lockett with any aspect of the administration of Mariposa." Robert was more involved, having signed Mariposa's tax returns. Mariposa hired J.E. Russell to act as its financial adviser and manage its assets. On April 16, 2002, Mariposa applied for a bank account with SunAmerica Securities, Inc. On the application, Joseph and Robert identified Mariposa as a trust. Mariposa also opened bank accounts with Franklin Templeton Investments and Pershing. Mariposa paid Joseph and Robert each a director's fee between $2,881 and $5,000 in 2003 plus reimbursement for expenses. At all times, Mr. Russell managed Mariposa's securities and liquid assets.

9.    The Transfers

    A.    Transfers to Joseph

On May 21, 2002, less than two weeks after Mariposa had been funded, Mariposa transferred $200,000 to Joseph. Joseph executed a 10-year promissory note in favor of Mariposa in the amount of $200,000, agreeing to pay annual interest of 5.85% due May 21 of each year. On June 15, 2003, Joseph made a principal payment of $10,000 towards the $200,000 promissory note. Joseph failed to pay the required interest payment of $11,700 on May 21, 2003.

On August 16, 2004, Joseph received an additional $100,000 from Mariposa and executed a new promissory note in the amount of $315,000. The promissory note consisted of the $190,000 of principal remaining on the May 21, 2002, promissory note, the accrued interest from that promissory note, and the additional transfer of $100,000. The promissory note required annual payments of 5% interest due June 1 of each year. The promissory note did not state a principal repayment date. Joseph failed to make interest payments on the note. On July 28, 2008, Mariposa filed a claim against the Estate of Joseph L. Lockett, Sr. (Joseph's estate) for repayment of the $315,000 transfer.

Joseph also received $20,000 from Mariposa on August 31, 2004. No promissory note memorializing the transfer was executed. In 2008 Mariposa made a claim against Joseph's estate for the $20,000 transfer.

B.    Transfers to Robert and Karen

On May 21, 2002, Mariposa transferred $200,000 to Robert and Karen. Mr. Haga drafted a 10-year promissory note in favor of Mariposa in which Robert and Karen agreed to pay annual interest of 5.85% on the principal amount of $200,000 due on May 21 of each year. Neither Robert nor Karen signed the promissory note. On October 22, 2002, Robert and Karen made a principal payment of $150,000 towards the $200,000 promissory note. Robert and Karen failed to make their required interest payment on May 21, 2003, but made a late payment of interest on September 29, 2003 of $2,750.[5]

On August 16, 2004, Robert and Karen received an additional $80,000 from Mariposa and executed a new promissory note in the amount of $135,000. The promissory note consisted of the $50,000 of principal remaining on the May 21, 2002, promissory note, $5,000 of accrued interest from the May 21, 2002,

---

[5]Robert owed Mariposa 5.85 % interest on $200,000 for 5 months and 12 days, and an additional 5.85 % interest on $50,000 for the remaining 6 months and 18 days of the first year. This amounts to about $6,900 of interest due for the first year of the loan.

promissory note, and the additional transfer of $80,000. The promissory note required annual payments of 5% interest due June 1 of each year. The promissory note did not state a principal repayment date. To date, no principal or interest payments have been paid on the August 16, 2004, promissory note.

C.    Transfer to Meredith

In 2004 Mariposa transferred $5,000 to Meredith. No promissory note was executed. No information has been presented regarding the terms of the transfer.

10.    Real Estate Transactions

On June 23, 2003, Mariposa purchased a house in Camp Verde, Arizona (Camp Verde property), for $165,000. On August 1, 2003, Mariposa leased the Camp Verde property to Mark and Beverly Weber for $650 per month. The Webers failed to perform under their lease agreement and pay the rent. No action was taken to collect the past due rent from the Webers or institute eviction proceedings. On January 6, 2004, Mariposa purchased a house in Goodyear, Arizona (Goodyear property) for $166,934.

11.    Mrs. Lockett's Assets at the Date of Her Death

On October 14, 2004, Mrs. Lockett unexpectedly died of pneumonia. On the date of her death, Mrs. Lockett held $416,808 in cash and securities in the Lockett Trust and $104,783 in cash and securities outside of the Lockett Trust.

The parties stipulated that Mariposa held assets worth $1,109,112 on Mrs. Lockett's date of death. These assets included the Meredith Lockett Lamb transfer valued at $2,271. As discussed below, the transfer to Meredith is not a loan but a gift. Therefore, the transfer should not be included as a Mariposa asset. The $20,000 transfer to Joseph on August 31, 2003, is also not a loan but a gift. Likewise that transfer should not be included as a Mariposa asset. On the date of Mrs. Lockett's death, Mariposa held assets valued at $1,106,841.[6]

| Asset | Stipulated Fair Market Value on October 14, 2004 |
|---|---|
| Money market fund | $38,100 |
| Stocks | 116,862 |
| Mutual funds | 155,279 |
| Robert and Karen Lockett promissory note | 109,992 |
| Joseph Lockett promissory note | 240,608 |
| Camp Verde property | 178,000 |
| Goodyear property | 183,000 |
| REITs | 85,000 |
| Total | 1,106,841 |

---

[6]The gift to Meredith has been removed from the assets held by Mariposa as stipulated by the parties. The $20,000 gift to Joseph was never included in the assets held by Mariposa as stipulated by the parties.

On its Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, the estate reported Mrs. Lockett as the 100% owner of Mariposa at her death. The estate valued Mrs. Lockett's 100% ownership interest in Mariposa at $667,000. The estate applied control and marketability discounts in determining the value of Mrs. Lockett's 100% ownership interest in Mariposa.

On January 8, 2009, respondent issued the estate a notice of deficiency in each of the above-docketed cases. In the notice of deficiency for docket No. 8940-09 respondent determined a Federal gift tax deficiency of $82,745. Respondent determined that the purported loans of $135,000, $335,000, and $5,000 to Robert,[7] Joseph, and Meredith, respectively, were taxable gifts subject to Federal gift tax. After applying $27,000 for the annual exclusions, respondent determined the estate had made $448,000 of taxable gifts in 2004, subject to a Federal gift tax of $82,745.[8]

In the notice of deficiency for docket No. 8922-09 respondent determined a Federal estate tax deficiency of $706,110. The notice of deficiency included in the

[7]The notice of deficiency refers to a gift to Robert, even though the transfer of money was to both Robert and Karen.

[8]Respondent treats the transfers as having taken place in 2004 because the promissory notes were signed in 2004; however, portions of the transfers of cash to Joseph, Robert, and Karen took place in 2002.

gross estate $1,219,587, the value of the property that Mrs. Lockett had transferred to Mariposa. Respondent also increased Mrs. Lockett's adjusted taxable gifts from $1,431,664 to $2,013,165 and decreased her aggregate gift tax payable from $504,641 to $388,611. The estate concedes that Mrs. Lockett's adjusted taxable gifts should be increased to $1,565,165. The estate contests the remaining increase of $448,000 attributable to the loans to Robert, Joseph, and Meredith. The estate also concedes that Mrs. Lockett's aggregate gift tax payable should be decreased to $305,866. The estate contests $82,745 of gift tax determined in the notice of deficiency which is attributable to the transfers to Robert, Joseph, and Meredith. Respondent concedes that including the transfers as both assets of Mariposa and gifts by Mrs. Lockett is an inconsistent position that must be dealt with in any Rule 155 computation resulting from a decision of the Court. The estate filed petitions with this Court on April 13, 2009.

OPINION

I.     Burden of Proof

The estate bears the burden of proving that respondent's determinations are erroneous. See Rule 142(a).

II.    Federal Gift Tax Law

Section 2501(a)(1) generally imposes a tax for each calendar year on the transfer of property by gift during the year by an individual.  Although the Code does not explicitly define what constitutes a gift for purposes of section 2501(a)(1), section 2512(b) provides:  "Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift".  Section 25.2511-1(g)(1), Gift Tax Regs., provides in pertinent part:

> Donative intent on the part of the transferor is not an essential element in the application of the gift tax to the transfer.  The application of the tax is based on the objective facts of the transfer and the circumstances under which it is made, rather than on the subjective motives of the donor. * * * The gift tax is not applicable to a transfer for a full and adequate consideration in money or money's worth, or to ordinary business transactions, described in § 25.2512-8.

The parties agree that Mariposa[9] transferred $335,000,[10] $135,000, and $5,000 to Joseph, Robert, and Meredith, respectively. The only dispute here is whether the transfers at issue were loans or gifts. The estate contends that each of those transfers was in form and in substance a loan, and not a gift, for Federal gift tax purposes because Mariposa entered into a bona fide creditor-debtor relationship with Robert, Joseph, and Meredith at the time of the transfers. Respondent contends that although each of the transfers at issue was, in form, a loan that purported to establish such a relationship, in substance, each transfer was a gift.

The question whether a taxpayer has entered into a bona fide creditor-debtor relationship pervades the Federal tax law. See, e.g., Estate of Maxwell v. Commissioner, 98 T.C. 594, 603-604 (1992), aff'd, 3 F.3d 591 (2d Cir. 1993); Estate of Kelley v. Commissioner, 63 T.C. 321, 324-325 (1974); Estate of Van Anda v. Commissioner, 12 T.C. 1158, 1162 (1949), aff'd per curiam, 192 F.2d 391

---

[9]Though we have yet to address the issue of whether Mrs. Lockett was the legal owner of all of Mariposa's assets at the time of the transfers in question, for purposes of this section we shall continue to refer to the transfers as between Mariposa and Robert, Joseph, and Meredith, given that all documents were signed in Mariposa's name and all payments were made to and from Mariposa's accounts.

[10]The $335,000 consists of the $315,000 promissory note executed by Joseph and the additional $20,000 Joseph withdrew from Mariposa on August 31, 2004.

(2d Cir. 1951). "Transactions within a family group are subject to special scrutiny, and the presumption is that a transfer between family members is a gift". Harwood v. Commissioner, 82 T.C. 239, 258 (1984) (citing Estate of Reynolds v. Commissioner, 55 T.C. 172, 201 (1970)), aff'd without published opinion, 786 F.2d 1174 (9th Cir. 1986). That presumption may be rebutted by an affirmative showing that at the time of the transfer the transferor had a real expectation of repayment and an intention to enforce the debt. Estate of Van Anda v. Commissioner, 12 T.C. at 1162. The mere promise to pay a sum of money in the future accompanied by an implied understanding that the promise will not be enforced is not afforded significance for Federal tax purposes, is not deemed to have value, and does not represent adequate and full consideration in money or money's worth. See Estate of Maxwell v. Commissioner, 98 T.C. at 604-605.

The determination of whether a transfer was made with a real expectation of repayment and an intention to enforce the debt depends on all the facts and circumstances, including whether: (1) there was a promissory note or other evidence of indebtedness, (2) interest was charged, (3) there was any security or collateral, (4) there was a fixed maturity date, (5) a demand for repayment was made, (6) any actual repayment was made, (7) the transferee had the ability to repay, (8) any records maintained by the transferor and/or the transferee reflected

the transaction as a loan, and (9) the manner in which the transaction was reported for Federal tax purposes is consistent with a loan.  See Zimmerman v. United States, 318 F.2d 611, 613 (9th Cir. 1963); Estate of Maxwell v. Commissioner, 98 T.C. at 604; Estate of Kelley v. Commissioner, 63 T.C. at 323-324; Rude v. Commissioner, 48 T.C. 165, 173 (1967); Clark v. Commissioner, 18 T.C. 780, 783 (1952), aff'd, 205 F.2d 353 (2d Cir. 1953); Estate of Van Anda v. Commissioner, 12 T.C. at 1162-1163.  No one factor may be determinative.  See Estate of Maxwell v. Commissioner, 98 T.C. at 604.

With the foregoing factors in mind, we turn to the facts and circumstances surrounding each of the transfers at issue to determine whether at the time of each transfer Mariposa entered into a bona fide creditor-debtor relationship with Joseph and Robert.

A.     Transfers to Joseph

1.     $315,000 Transfer

Joseph signed a promissory note on May 21, 2002, for $200,000 which had a 10-year term and required annual interest of 5.85%.  Joseph failed to make interest payments on this note but made a $10,000 payment toward the principal of the note.  On August 16, 2004, Joseph received an additional $100,000 from Mariposa and executed a new promissory note for $315,000.  This new $315,000 promissory

note replaced the prior $200,000 promissory note and incorporated the unpaid principal and interest of that prior promissory note. It is this $315,000 promissory note which is at issue in these cases.

Joseph failed to make any payments on the $315,000 promissory note. The promissory note called for annual interest payments of 5% due June 1 of each year. No property or other collateral was given to secure the note, and no maturity date was listed on the note. The record does not contain any information about Joseph's assets at the time he signed the $315,000 promissory note; thus it is unclear whether Joseph had the ability to repay the amount borrowed. However, Mariposa made a demand for the payment of the $315,000 promissory note against Joseph's estate on July 28, 2008, and the estate states that it expects full payment on its claim. Finally, Mariposa treated the transactions as loans. Mariposa's accountant drafted the promissory note, kept an amortization schedule, and reported each transaction as a loan. Moreover, on Mrs. Lockett's estate's Federal estate tax return, the $315,000 promissory note is listed as one of Mariposa's assets.

On the basis of our examination of the entire record with respect to the $315,000 transfer, we find that the estate has established that Mariposa entered into a bona fide creditor-debtor relationship with Joseph at the time of the transfer.

Therefore, the transfer is a loan and the $315,000 promissory note is an asset of Mrs. Lockett's estate.

### 2. $20,000 Transfer

Joseph received $20,000 from Mariposa on August 31, 2004. Joseph failed to execute a promissory note reflecting the $20,000 transfer. There is no evidence of any interest paid on the $20,000 transfer or repayment of the principal. Additionally, there is no information as to whether Joseph or Mariposa treated the transfer as a loan. The only evidence in the record that the parties considered the transfer a loan is a claim by Mariposa against Joseph's estate.

On the basis of our examination of the entire record with respect to the $20,000 transfer, we find that the estate has not established that Mariposa entered into a bona fide creditor-debtor relationship with Joseph at the time of the transfer. Therefore, the transfer is a gift from Mrs. Lockett to Joseph subject to Federal gift tax after application of the annual exclusion and will not be considered an asset of Mrs. Lockett's estate.

### B. Transfer to Robert and Karen

Robert and Karen received $200,000 from Mariposa on May 21, 2002. A promissory note was prepared for $200,000 which they did not sign, but had a 10-year term and required annual interest of 5.85%. Robert and Karen made a $2,750

interest payment on the note and repaid $150,000 of the principal of the note. On August 16, 2004, Robert and Karen received an additional $80,000 from Mariposa and executed a new promissory note in the amount of $135,000. This new $135,000 promissory note replaced the prior $200,000 promissory note and incorporated the unpaid principal and interest of the prior promissory note. It is this $135,000 promissory note which is at issue in these cases.

The new promissory note called for annual interest payments of 5% due June 1 of each year. No property or other collateral was given to secure the note, and no maturity date was listed on the note. Robert and Karen failed to make payments on the $135,000 promissory note. The record does not contain any information about Robert and Karen's assets at the time they signed the $135,000 promissory note; thus it is unclear whether they had the ability to repay the amount borrowed. To date no demand has been made for payment of the $135,000 promissory note. Finally, Mariposa treated the transactions as loans. Mariposa's accountant drafted the promissory note, she kept an amortization schedule, and reported each transaction as a loan. Moreover, on Mrs. Lockett's Federal estate tax return, the $135,000 promissory note is listed as one of Mariposa's assets.

On the basis of our examination of the entire record with respect to the $135,000 transfer, we find that the estate has established that Mariposa entered into

a bona fide creditor-debtor relationship with Robert and Karen at the time of the transfer. Therefore, the transfer is a loan and the $135,000 promissory note is an asset of Mrs. Lockett's estate.

C.     Transfer to Meredith

Meredith received $5,000 from Mariposa in 2004. She failed to execute a promissory note reflecting the transaction. There is no evidence of any interest paid or repayment of any principal. The only evidence in the record that the parties considered the transfer a loan is its being listed on Mrs. Lockett's estate's Federal estate tax return as a Mariposa asset.

On the basis of our examination of the entire record with respect to the $5,000 transfer, we find that the estate has not established that Mariposa entered into a bona fide creditor-debtor relationship with Meredith at the time of the transfer. Therefore, the transfer is a gift from Mrs. Lockett to Meredith, and the $5,000 will not be included in the value of Mrs. Lockett's gross estate. The gift is for less than the annual exclusion; therefore, it will not result in a Federal gift tax liability. See sec. 2503(b).

D.     Conclusion

We find that the transfers of $20,000 to Joseph and $5,000 to Meredith are gifts.  Additionally, we find that the promissory notes for $315,000 and $135,000 evidence loans to Joseph, and to Robert and Karen, respectively.

III.     Formation of the Partnership

Ariz. Rev. Stat. Ann. (A.R.S.) sec. 29-1012(A) (1998) provides that "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership."

Respondent argues that Mariposa is not a valid partnership under Arizona law because only Mrs. Lockett contributed assets to the partnership, and thus there was no association of two or more persons.  Respondent further argues that Mariposa is not a valid partnership under Arizona law because it did not operate a business for profit.  The estate argues that a valid partnership was formed under Arizona law because the partnership was formed with two limited partners, Mrs. Lockett and Trust A, and two general partners, Robert and Joseph.  The estate further argues that Mariposa operated a business for profit.

A.    Whether the Parties Formed Mariposa To Operate a Business for Profit

Respondent argues that Mariposa was not a business because it engaged in minimal economic activity and because it was not operated as though it was intended to derive a profit. We agree there was minimal economic activity, but we find no requirement that an Arizona business engage in a certain level of activity. Moreover, we find that Mariposa was operated to derive a profit. Mariposa hired Mr. Russell to manage its portfolio of stocks, purchased real estate which it leased, and made loans requiring annual interest payments. Accordingly, we find that Mariposa operated a business for profit.

B.    Whether Robert and Joseph Were General Partners in Mariposa

The estate concedes that Robert and Joseph did not make capital contributions to Mariposa. However, the estate argues that a general partner in an Arizona partnership is not required to make a capital contribution in order to share in the profits and loss of the partnership. The estate cites A.R.S. sec. 29-325, which provides in part that a "general partner of a limited partnership may make contributions to the partnership and share in the profits and losses of, and in distributions from, the limited partnership as a general partner." The estate misreads the statute. The statute when read as a whole is intended to clarify that a

partner in a limited partnership may be both a general partner and a limited partner. Moreover, the statute defines what rights and powers a partner who is both a general and limited partner has in the partnership and the restrictions that partner must adhere to. A plain reading of the above excerpt suggests that a general partner who makes a contribution to a limited partnership may share in profits and losses of that limited partnership. The statute does not state that a general partner is not required to make a capital contribution in order to share in the profits and loss of the partnership as the estate claims.

Respondent argues that Robert and Joseph were required to contribute value to Mariposa in exchange for their claimed general partnership interests. We agree. A.R.S. sec. 29-1003(A) provides that "relations among the partners and between the partners and the partnership are governed by the partnership agreement." The Mariposa agreement requires the partners to contribute capital to Mariposa in exchange for their interests. A.R.S. sec. 29-327 provides that a "contribution of a partner may be in cash, property or services rendered, or a promissory note or other obligation to contribute cash or property or to perform services." As previously noted, neither Robert nor Joseph made a contribution of cash or property to Mariposa. However, the estate argues that Robert and Joseph performed

services for their interests in the partnership.  Alternatively, the estate argues that

Robert and Joseph received a gift of an interest in the partnership.

    1.    <u>Whether Robert and Joseph Performed Services for Mariposa in Exchange for Their General Partnership Interests</u>

The estate argues that Robert and Joseph, by virtue of agreeing to be the

general partners of Mariposa, performed services in exchange for their partnership

interests.  We disagree.  Robert and Joseph were minimally involved in the

operations of Mariposa.  Joseph's wife in an affidavit stated that "To the best of

 * * * [her] knowledge Joseph was not involved in any aspect of the administration

of Mariposa."  Further, aside from signing a few documents as general partners of

Mariposa, it is entirely unclear what tasks Robert and Joseph performed for

Mariposa.  From the evidence we find that Mariposa's activities were managed by

its attorneys and accountants and Mr. Russell, who continued to manage the

securities transferred to Mariposa.  We do not find that Robert and Joseph

performed services for Mariposa in exchange for their general partnership interests.

2.  Whether Robert and Joseph Received Their General Partnership Interests as Gifts

The estate argues that Robert and Joseph together received either a gift of a 1% general partnership interest in Mariposa or alternatively a gift of an 11.68% general partnership interest in Mariposa.

a.  Gift of 1% General Partnership Interest

Section 4.1 of the Mariposa agreement provides that "The General Partners must collectively own at all times Units equivalent to at least one percent (1%) participation interest." The estate argues that Robert and Joseph received this 1% general partnership interest by gift. As evidence of the gift, the estate points to the Mariposa agreement. It argues that the agreement required the general partners to hold a 1% interest, Robert and Joseph were named general partners in the agreement, they signed the agreement, and they did not contribute capital; therefore they must have received a gift of the 1% interest from Mrs. Lockett effective March 26, 2002, the date they signed the agreement. For support the estate cites the agreement and discussions Robert had with his mother about receiving an interest in Mariposa as a gift. We do not find any of this evidence persuasive. Mr. Haga, who drafted the Mariposa agreement, testified that section 4.1 was a standard provision he includes in every partnership agreement he drafts. It was not added to facilitate

gifts to Robert and Joseph. Moreover, the estate was unable to introduce any specific evidence memorializing such gift. Mrs. Lockett failed to report such gifts on a 2002 Federal gift tax return, and schedule A of the Mariposa agreement left Robert and Joseph's interest in Mariposa blank.

### b. Gift of 11.68% General Partnership Interest

The estate alternatively argues that Robert and Joseph received a combined 11.68% general partnership interest by gift through Mrs. Lockett's contribution of $125,000 to Mariposa. On April 5, 2002, Mrs. Lockett wrote a check to Mariposa for $125,000. The check's memo line stated: "Deposit to Mariposa Monarch L.L.L.P." The estate claims that this check was meant as a gift of an 11.68% general partnership interest to Robert and Joseph. We find no evidence to support the estate's claim. The check memo line made no reference to a gift, and the estate could not introduce any documents memorializing the gifts. As with the claimed 1% gift, Mrs. Lockett did not report a $125,000 gift on a 2002 Federal gift tax return. The estate also relies on Robert's testimony of discussions he had with his mother regarding the gift of an interest in Mariposa, but that testimony is vague and cannot be relied upon as evidence of such a gift.

Finally, all the evidence in the record points to the fact that Robert and Joseph did not own interests in Mariposa and did not question the fact that they did not own

interests in Mariposa. Schedule A of the Mariposa Amendment lists Mrs. Lockett as owning 100% of Mariposa and Robert and Joseph as owning a 0% interest. The Forms 1065 and Schedules K and K-1 filed for Mariposa and its partners in 2002 and 2003 assign all profits and losses to Mrs. Lockett. The 2004 Schedules K-1 issued to Robert and Joseph assign each of them half of Mariposa's profits and losses for only the last two months of the year after Mrs. Lockett's death. Robert nor Joseph included any of Mariposa's income or loss on his individual Federal income tax returns for 2002 and 2003. In fact, Mrs. McClanahan, Mariposa's accountant, testified that she could not assign Robert and Joseph any of Mariposa's profits or losses because she did not have sufficient evidence of their ownership interests. Additionally, on Mrs. Lockett's estate's Federal estate tax return, Mrs. Lockett is listed as owning 100% of the interest in Mariposa. Finally, the estate during the audit of the estate tax return maintained that Robert and Joseph held only a 1% general partnership interest. In fact, they had an appraisal done for a 99% limited partnership interest in Mariposa. The estate concedes that it was only after the audit was concluded that it realized that Mrs. Lockett had made a $125,000 gift to her sons and thus had an appraisal done for an 88.12% limited partnership interest in Mariposa. We find it hard to believe that Robert

received a gift of a partnership interest in 2002 and yet did not know about it until 2010.

We find that Robert and Joseph did not receive gifts of a partnership interest in Mariposa and at no time held interests in Mariposa.

C.    Whether Trust A Was a Limited Partner in Mariposa

Respondent argues that Trust A was not a limited partner in Mariposa because it did not contribute any assets to Mariposa. We disagree. The estate introduced evidence of contributions by Trust A to Mariposa of $477,383 on or about May 6, 2002, $171,097 on or about May 10, 2002, and $35,750 on or about October 29, 2002. Those transfers were in exchange for a limited partnership interest in Mariposa. Having found that Trust A contributed assets to Mariposa and therefore was a limited partner, we find that there was an association of two persons to carry on as coowners a business for profit in 2002.

IV.    Assets Held by Mrs. Lockett at the Time of Her Death

Respondent argues that even though the parties formed a valid partnership under Arizona law, at the time of Mrs. Lockett's death she had acquired 100% of the interest in Mariposa and thus the partnership had terminated under State law. In May 2003 the decision was made to terminate Trust A effective December 31, 2002. As a result, Mrs. Lockett became the owner of Trust A's limited partnership

interest in Mariposa. Since Trust A was the only other partner in Mariposa, upon termination of Trust A, Mrs. Lockett became the sole partner in Mariposa. The parties amended the Mariposa agreement in or around May 9, 2003, to reflect Mrs. Lockett's 100% ownership interest in Mariposa.

A.R.S. sec. 29-1071(3) provides that a partnership is dissolved and its business wound up upon the occurrence of an event agreed to in the partnership agreement resulting in the winding up of the partnership business. Article 9.1 of the Mariposa agreement provided Mariposa would be dissolved upon the acquisition by a partner of all the interests of the other partners. Therefore, Mrs. Lockett's acquisition of Trust A's limited partnership interest caused the dissolution of Mariposa under Arizona law. On December 31, 2002, Mrs. Lockett became the legal owner of all of Mariposa's assets pursuant to Arizona law.

V.     Federal Estate Tax Law

"State law determines the nature of property rights, and Federal law determines the appropriate tax treatment of those rights." Knight v. Commissioner, 115 T.C. 506, 513 (2000). On October 14, 2004, the date of Mrs. Lockett's death, for State law purposes Mrs. Lockett, individually, was the legal owner of all of Mariposa's assets.

As a general rule, the Code imposes a Federal excise tax "on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." Sec. 2001(a). The taxable estate, in turn, is defined as "the value of the gross estate" less applicable deductions. Sec. 2051. Section 2031(a) specifies that the gross estate comprises "all property, real or personal, tangible or intangible, wherever situated", to the extent provided in sections 2033 through 2045 (i.e., subtitle B, chapter 11, subchapter A, part III of the Code).

Section 2033 provides broadly that "The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." As alternately expressed by regulation, the gross estate encompasses all property "beneficially owned by the decedent at the time of his death." Sec. 20.2033-1(a), Estate Tax Regs. Sections 2034 through 2045 then explicitly mandate inclusion of several more narrowly defined classes of assets.

Mrs. Lockett held a legal and beneficial interest in all the assets of Mariposa on the date of her death. As a result, 100% of the fair market value of those assets on October 14, 2004, is included in Mrs. Lockett's gross estate pursuant to sections 2031 and 2033. The parties have stipulated that the fair market value of Mariposa's

assets on October 14, 2004, was $1,106,841.[11]  As a result we find for respondent and hold the estate is liable for a Federal estate tax deficiency to be determined pursuant to a Rule 155 calculation.

## VI.    Conclusion

As we previously noted, respondent has conceded that he included the loans to Robert, Joseph, and Meredith as both assets of Mariposa and gifts by Mrs. Lockett in calculating the estate tax deficiency in docket No. 8940-09.  The estate is liable for a Federal gift tax deficiency attributable to the $20,000 gift made to Joseph and the $5,000 gift made to Meredith.  The estate is also liable for a Federal estate tax deficiency for failing to include the fair market value of Mariposa's assets on Mrs. Lockett's date of death in the value of her gross estate.  The parties have stipulated the fair market value of these assets, and a determination will have to be made pursuant to Rule 155.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

---

[11]See supra Findings of Fact, sec. 11.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.